# UNITED STATES DISTRICT COURT

_____ DISTRICT OF MASSACHUSETTS _____

UNITED STATES OF AMERICA

v.

YOHAN A. GERMOSEN

## CRIMINAL COMPLAINT

M.J. No.: 2005-M-0413-RBC

I, the undersigned complainant being duly sworn state the following is true and correct to the best of my knowledge and belief. On or about **March 10, 2004,** in **Suffolk** County and elsewhere in the District of **Massachusetts**, defendant did, (Track Statutory Language of Offense)

**Unlawfully import into the United States from a place outside thereof, to wit the Dominican Republic, heroin, a Schedule I controlled substance,**

in violation of Title __21__ United States Code, Sections __952(a), 960__.

I further state that I am a __Special Agent - Immigration and Customs Enforcement ("ICE")__
Official Title

and that this complaint is based on the following facts:

**Please see attached Affidavit of Special Agent Peter A. Darling.**

Continued on the attached sheet and made a part hereof: [x] Yes  [ ] No

Signature of Complainant
Peter A. Darling
Special Agent - ICE

Sworn to before me and subscribed in my presence,

March 10, 2005 at 2:13 pm    at Boston, Massachusetts
Date                         City and State

Robert B. Collings,
**United States Magistrate Judge**      Signature of Judicial Officer
Name and Title of Judicial Officer

HON. ROBERT B. COLLINGS
UNITED STATES MAGISTRATE JUDGE
United States District Court
United States Courthouse, - Suite 6420
1 Courthouse Way
Boston, MA 02210

**AFFIDAVIT OF SPECIAL AGENT PETER A. DARLING**

I, PETER A. DARLING, being duly sworn, hereby depose and state as follows:

1. I am a Special Agent with the Department of Homeland Security, Office of Immigration and Customs Enforcement ("ICE"). I have been employed as a Special Agent for ICE since November 1998. I have been assigned to ICE's Drug Smuggling Group located in Boston, Massachusetts, since November 2003. Prior to November 2003, I was assigned to a Drug Smuggling Task Force in Chicago, Illinois, at O'Hare International Airport. I have participated in numerous drug-related arrests and interviewed numerous witnesses and defendants. I have received specialized training sponsored by the USCS regarding narcotics identification, narcotics investigations, and narcotics. I am familiar with the appearance of narcotics sold on the street, including heroin, and the manner in which such narcotics are packaged and sold.

2. I submit this affidavit in support of a criminal complaint charging **YOHAN A. GERMOSEN** (DOB: 1/10/77) with knowingly, intentionally and unlawfully importing heroin, a Class I controlled substance, into the United States from a place outside thereof, in violation of 21 U.S.C. §952(a) and §960.

3. The information contained in this Affidavit is based upon facts and circumstances learned by me personally and information related to me by other law enforcement officers involved in the

1

investigation. This affidavit does not set forth all the facts developed during the course of this investigation. Rather, it sets forth only those facts that are necessary and sufficient to establish probable cause to believe that **YOHAN A. GERMOSEN** has committed the crime set forth in the accompanying Criminal Complaint.

4. On Thursday, March 10, 2003, at approximately 12:45 a.m., American Airlines Flight 2084 arrived at Logan International Airport ("Logan") in Boston. Flight 2084 had originated in the Dominican Republic. **YOHAN A. GERMOSEN** was a passenger on that flight.

5. At Logan, **YOHAN A. GERMOSEN** de-boarded the plane along with the other passengers. After disembarking, **YOHAN A. GERMOSEN** presented his passport to Customs and Border Protection ("CBP") inspectors at Logan Airport. The inspectors selected **YOHAN A. GERMOSEN** for secondary inspection. **YOHAN A. GERMOSEN** had just traveled to the Dominican Republic in January 2005 with an individual identified as Hector El Monte. El Monte had made a number of trips to the Dominican Republic over the past two (2) years. For his current trip, **YOHAN A. GERMOSEN**'s airline ticket, which cost $900.00, had been purchased in cash two (2) days prior to his trip. **YOHAN A. GERMOSEN** visited the Dominican Republic for a period of only three (3) days. **YOHAN A. GERMOSEN** was also coming from a country that is known as a source country for narcotics.

6. During his secondary examination, the CBP inspectors examined his luggage and asked **YOHAN A. GERMOSEN** questions concerning the purchase of his airline ticket. **YOHAN A. GERMOSEN** was unable to name the travel agency through which his airline ticket had been purchased. He was also unable to provide any details regarding the purchase of the ticket, including when it was purchased, who purchased it, or how it was obtained from the travel agency.

7. CBP inspectors noticed that **YOHAN A. GERMOSEN** was very nervous during the secondary examination and appeared to have a dry mouth and difficulty swallowing.

8. CBP inspectors asked **YOHAN A. GERMOSEN** the purpose of his trip to the Dominican Republic. **YOHAN A. GERMOSEN** responded that he traveled to the Dominican Republic to explore the possibility of setting up a music business. CBP inspectors then asked **YOHAN A. GERMOSEN** if he had family in the Boston area. **YOHAN A. GERMOSEN** stated that he was married and had two (2) children, and that his family lives in Lynn, Massachusetts. CBP inspectors asked for permission to call **YOHAN A. GERMOSEN'**s wife. After obtaining her telephone number from **YOHAN A. GERMOSEN**, CBP inspectors called **YOHAN A. GERMOSEN'**s wife and asked her why her husband had traveled to the Dominican Republic. **YOHAN A. GERMOSEN'**s wife stated that he traveled to the Dominican Republic for a funeral.

9. Based on the foregoing information, CBP inspectors suspected that **YOHAN A. GERMOSEN** was an internal courier of narcotics. The inspectors explained their suspicions to **YOHAN A. GERMOSEN** and asked him whether he would consent to an x-ray at a local hospital. **YOHAN A. GERMOSEN** agreed to undergo an x-ray and signed a consent form.

10. At this point, **YOHAN A. GERMOSEN** voluntarily admitted to the CBP inspectors that he had, in fact, swallowed 25 pellets of heroin in the Dominican Republic for delivery to the United States. **YOHAN A. GERMOSEN** agreed to cooperate with the CBP inspectors.

11. CBP inspectors contacted Special Agent Peter Darling from ICE and transported **YOHAN A. GERMOSEN** to the Whidden Hospital in Everett, Massachusetts. The inspectors advised **YOHAN A. GERMOSEN** that Special Agent Darling would meet him at the hospital for further questioning.

12. At the Whidden Hospital, **YOHAN A. GERMOSEN** underwent an x-ray, which revealed the presence of roughly twenty-five (25) objects in **YOHAN A. GERMOSEN**'s stomach. Medical personnel then administered to **YOHAN A. GERMOSEN** a liquid substance that would assist him in passing the pellets.

13. Within a short period of time, **YOHAN A. GERMOSEN** passed several pellets, one of which was field tested by CBP inspectors. The results of the field test showed that the tested pellet

contained approximately 10-12 grams of heroin.

14. Special Agent Darling advised **YOHAN A. GERMOSEN** of his Miranda rights. **YOHAN A. GERMOSEN** agreed to waive his rights and signed a waiver form. **YOHAN A. GERMOSEN** told Special Agent Darling that he became involved in heroin smuggling through Hector El Monte, with whom he works at North Shore Buick, 700 Broadway Street, Malden, Massachusetts. **YOHAN A. GERMOSEN** said that he has known El Monte for approximately two (2) years. While traveling to the Dominican Republic with El Monte in January 2005, El Monte introduced **YOHAN A. GERMOSEN** to Jose LNU, who asked **YOHAN A. GERMOSEN** if he was interested in making some extra money by smuggling drugs to the United States. **YOHAN A. GERMOSEN** stated that he did not smuggle drugs to the United States on this January 2005 trip. **YOHAN A. GERMOSEN** further stated that to the best of his knowledge, nor did El Monte smuggle drugs back to the United States during this January trip.

15. **YOHAN A. GERMOSEN** then told Special Agent Darling that several days ago, El Monte approached him and stated that he had received several calls from an individual in Lawrence, Massachusetts, who was asking if **YOHAN A. GERMOSEN** was still interested in traveling to the Dominican Republic to smuggle drugs back to the United States. **YOHAN A. GERMOSEN** told El Monte that he was, in fact, still interested.

16. On March 5, 2005, El Monte instructed **YOHAN A. GERMOSEN** to meet two (2) Dominican males in the vicinity of the North Shore Buick dealership. During that meeting, **YOHAN A. GERMOSEN** received an airline ticket to the Dominican Republic and $300.00 cash from one of the males. Neither of the Dominican males provided their names or other contact information to **YOHAN A. GERMOSEN.**

17. YOHAN A. GERMOSEN was told that an individual named "Flaco" would meet him at the airport in the Dominican Republic.

18. On March 6, 2005, **YOHAN A. GERMOSEN** traveled from Boston, Massachusetts, to the Dominican Republic, where he was greeted by a thin Dominican male, who identified himself as "Flaco." Flaco then drove **YOHAN A. GERMOSEN** to **YOHAN A. GERMOSEN**'s friend's house, where he stayed for two (2) nights.

19. On or about March 8, 2005, Flaco picked up **YOHAN A. GERMOSEN** and brought him to an unknown house. Flaco produced approximately seventy-five (75) pellets of heroin and instructed **YOHAN A. GERMOSEN** how to swallow them. **YOHAN A. GERMOSEN** also told Special Agent Darling that he was unable to swallow more than twenty-five (25) pellets.

20. Flaco then drove **YOHAN A. GERMOSEN** to the airport in the Dominican Republic. **YOHAN A. GERMOSEN** was scheduled to fly to the United States on March 9, 2005, arriving at Logan International Airport at approximately 8:30 p.m. Due to delays, the flight did not arrive until 12:45 a.m. on March 10, 2005.

21. Based on the information contained in this Affidavit, all of which is true and accurate to the best of my knowledge, information and belief, I believe that there is probable cause to believe that **YOHAN A. GERMOSEN** has violated 21 U.S.C. §§952(a) and 960.

_____
PETER A. DARLING
Special Agent
Bureau of Immigration and Customs Enforcement

Sworn to and subscribed before me the 10th day of March, 2005.

_____
**ROBERT B. COLLINGS**
United States Magistrate Judge

§JS 45 (5/97) - (Revised USAO MA 6/29/04)

# Criminal Case Cover Sheet                                    U.S. District Court - District of Massachusetts

**Place of Offense:** Boston                  **Category No.** II          **Investigating Agency** ICE

**City** Boston                **Related Case Information:**

**County** Suffolk
- Superseding Ind./ Inf.          **Case No.**
- Same Defendant                  **New Defendant**
- Magistrate Judge Case Number
- Search Warrant Case Number
- R 20/R 40 from District of

Juvenile:  ☐ Yes   ☒ No

**Defendant Information:**

**Defendant Name** Yohan A. Germosen                **Sex** M   **Race:** ___   **Nationality:** D.R.

**Alias Name** N/A

**Address** 114 Essex Street, Lynn, MA

**Birth date (Year only):** 1977      **SSN (last 4 #):** ___     **Address:** ___

**Defense Counsel if known:** ___                              **Bar Number if applicable** 634630

**Bar Number:** ___

**U.S. Attorney Information:**

**AUSA** Lisa M. Asiaf

**Interpreter:** ☐ Yes   ☒ No        **List language and/or dialect:** English

SEALED:  ☐ Yes   ☒ No

...ested ☒ Yes     ☐ No    ☒ Regular Process     ☒ In Custody