## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| United States of America ) | |
| ) | |
| v. ) | CRIMINAL NO.: 05-10120-NG |
| ) | |
| Yohan A. Germosen ) | |

## MOTION FOR DOWNWARD DEPARTURE OR OFFENSE-LEVEL ADJUSTMENT

Now comes the Defendant Yohan A. Germosen in the above-captioned matter and moves this Honorable Court to depart below the statutorily required minimum sentence in each offense.

As grounds therefore, the Defendant states that:

1. Certain offender characteristics exist which ought to be considered by the Court in its' determination of whether a sentence should be outside the applicable sentencing guideline range; and

2. Mitigating circumstances exist which also should be considered by the Court in its' determination of whether a sentence should be outside the applicable sentencing guideline range.

*See*, United States Sentencing Guidleines §§ 5H1.1 and 5H2.0. *See also*, 18 United States Code § 3553 and other applicable or relevant law or statute.

FOR THE DEFENDANT,
YOHAN A. GERMOSEN

By his attorney:

_____
John H. Molloy, BBO # 600778
Sean F. Donahue, BBO # 558058
385 Broadway, Suite 402
Revere, MA    02151

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

|  |  |  |
|---|---|---|
| United States of America | ) | |
| | ) | |
| v. | ) | CRIMINAL NO.: 05-10120-NG |
| | ) | |
| Yohan A. Germosen | ) | |

**DEFENDANT YOHAN GERMOSEN'S SENTENCING MEMORANDUM IN
SUPPORT OF DOWNWARD DEPARTURE OR OFFENSE-LEVEL ADJUSTMENT**

On March 10, 2005, the defendant Yohan A. Germosen ("Mr. Germosen") initially appeared before U.S. Magistrate Judge Robert B. Collings after having been named in a two-count complaint charging him with: (1) Conspiracy to Import at least 100 grams of Heroin in the United States in violation of 21 U.S.C. § 963, and (2) Unlawful Importation of at least 100 grams of Heroin in the United States in violation of 21 U.S.C. §§ 952 (a) and 960.

Following a period of detention, Mr. Germosen was released on March 14, 2005 on a $50,000 bond secured by real estate. Magistrate Collings also imposed restrictive conditions of release which included weekly in person and telephone reporting to pretrial services, random drug testing, surrender of a Dominican passport, restrictions on travel and residence, as well as statutory conditions of release.

On November 7, 2005, Mr. Germosen pled guilty to both counts of the complaint. As will be discussed *infra,* Mr. Germosen hereby seeks, and requests, downward departure or an offense-level adjustment from the applicable sentencing guideline range.

## STATEMENT OF FACTS

On March 10, 2005, at approximately 12:45 a.m., the defendant Yohan A. Germosen arrived in the United States at Logan International Airport, in Boston, Massachusetts, from Santo Domingo, Dominican Republic, aboard American Airlines Flight 2084.

Based upon information received by Customs and Border Protection ("CBP"), Mr. Germosen was subsequently stopped and questioned by CBP inspectors. The inspectors observed that Mr. Germosen exhibited nervous behavior during questioning. The inspectors eventually suspected that Mr. Germosen was an internal courier of narcotics. Upon request of CBP inspectors, Mr. Germosen consented to an x-ray examination at a local hospital. Mr. Germosen also admitted to CBP inspectors that he had swallowed approximately twenty-five (25) pellets of heroin in the Dominican Republic for delivery to the United States.

At the hospital, Mr. Germosen underwent an x-ray, which revealed the presence of foreign objects in his digestive tract. With the assistance of a liquid substance that facilitates the passing of such objects, Mr. Germosen passed several pellets, one of which field-tested positive for approximately 10-12 grams of heroin.

In a *Post-Miranda* interview, Germosen informed investigators that he became involved in heroin smuggling through an individual he worked with at North Shore Buick, in Malden, Massachusetts. That individual's name is Hector Almonte. Germosen provided investigators with intimate details of his relationship with Almonte.

Over the next several months, Mr. Germosen worked with investigators in an effort to inculpate Almonte in his drug-smuggling activities. In addition to his cooperation with investigators, Mr. Germosen also accepted responsibility for his own actions and pled guilty to each count of the complaint.

Additionally, on March 24, 2005, Mr. Germosen appeared for a proffer in the United States Attorney's Office pursuant to a standard proffer agreement. The government has since agreed to treat Mr. Germosen's March 24th proffer as a "safety valve" proffer for purposes of the United States Sentencing Guidelines ("USSG") § 5C1.2(a)(5).

The government submits that Mr. Germosen has provided a truthful safety-valve proffer for purposes of USSG § 5C1.2(a)(5), and that: (i) a two-level reduction is therefore warranted under USSG § 2D1.1(b)(7), and (ii) if the Court finds that Mr. Germosen meets criteria set forth at 18 U.S.C. § 3553 (f)(1)-(5), it is authorized to impose a sentence below that which is otherwise statutorily mandated.

Mr. Germosen has admitted guilt and seasonably bore responsibility for his conduct. He submits that, in his opinion, he has rendered "substantial assistance" to the United States Government as defined by U.S.S.G. § 5K1.1, even though the government may ultimately decided not to file a motion in support thereof. Mr. Germosen also cites additional factors which he avers warrant downward departure and/or offense-level adjustments beyond that which is sought by the government.

## LEGAL ANALYSIS

### 1. MR. GERMOSEN MEETS CRITERIA SET FORTH AT 18 U.S.C. § 3553 (f)(1)-(5).

Never having been previously convicted or adjudicated of any crime, Mr. Germosen submits that he does not have more that 1 criminal history point, as determined under the sentencing guidelines. *See,* USSG § 4A1. *See also*, 18 U.S.C. § 3553 (f)(1).

Mr. Germosen also submits that he did not use violence or credible threats of violence or possess a firearm or other dangerous weapon during the commission the offenses in the instant case. *See, Id* at (f)(2). And, neither offense resulted in death or serious bodily injury to any person. *See, Id* at (f)(3).

3

Mr. Germosen further submits that he was not an organizer, leader, manager, or supervisor of others in either of the offenses, and was not engaged in a continuing criminal enterprise, as defined in Section 408 of the Controlled Substance Act. *See, Id* at (f)(4). Instead, the evidence demonstrates that Mr. Germosen was an unwitting dupe who, while knowing that he was transporting heroin into the United States, had no knowledge regarding the amounts in question.

And, lastly, the government has already submitted to this Court that that Mr. Germosen has provided a truthful safety-valve proffer for purposes of USSG § 5C1.2(a)(5), which, in effect, included all information and evidence Mr. Germosen has concerning the offenses that were part of the same course of conduct or of a common scheme or plan. *See, Id* at (f)(5).

If the Court finds that Mr. Germosen meets criteria set forth at 18 U.S.C. § 3553 (f)(1)-(5), it is authorized to impose a sentence below that which is otherwise statutorily mandated. Mr. Germosen submits that he meets that criteria and prays that this Court impose a sentence below that which is mandated by law.

### 2. MR. GERMOSEN HAS RENDERED "SUBSTANTIAL ASSISTANCE" IN THE INVESTIGATION OF ANOTHER PERSON.

As of the time of filing this memorandum with this Court, the government has not yet notified Mr. Germosen whether it will be filing a motion stating that Mr. Germosen has provided substantial assistance in the investigation of another person who has committed an offense. Regardless of whether the government will be filing such motion with this Court, Mr. Germosen furnishes the following information for purposes, which will be further discussed, later in this memorandum.

Soon after being stopped on March 10, 2005, Mr. Germosen began cooperating with federal authorities and then continued that cooperation over the next several months. For instance, on March 10th, Mr. Germosen spoke with Immigration and Customs Enforcement Special Agent Peter Darling ("S/A Darling"). In a *Post-Miranda* interview,

4

Mr. Germosen briefed S/A Darling of his involvement in heroin smuggling. He disclosed the identities of possible co-conspirators to S/A Darling, yet, at that time, failed to provide specific details regarding their involvement due to fear of retribution from those individuals.

On March 24, 2005, Mr. Germosen appeared for a proffer in the United States Attorney's Office pursuant to a standard proffer agreement. At that time, Mr. Germosen did, in fact, provide specific details regarding the involvement of various known individuals in heroin smuggling. Following that proffer, Mr. Germosen agreed to continue working with federal authorities in the investigation of, at least, one of those individuals.

During the investigation, Mr. Germosen agreed to: (1) speak or meet to S/A Darling upon request; (2) wear an electronic wiring device and record his conversations with a target of that investigation; and (3) meet with that targeted individual. Upon information and belief, federal authorities did obtain recorded conversations resulting from Mr. Germosen's cooperation.

Additionally, Mr. Germosen devised a plan in furtherance of the investigation where he agreed to seek employment at the targeted individual's place of employment, work to secure the trust and confidence in that individual, and then, within a matter of one to two weeks, wear an electronic wiring device in an effort of record incriminating statements from that individual. Yet, inexplicably, and despite his willingness to further the investigation, Mr. Germosen's proposed plan was rejected by federal authorities.

### 3. **MITIGATING CIRCUMSTANCES WARRANT DOWNWARD DEPARTURE.**

The United States Sentencing Guidelines ("USSG") "place essentially no limit on the number of potential factors that may warrant a departure." *Koon v. United States*, 518 U.S. 81 (1996); *See, United States v. Colemen*, 188 F. 3d 354, 358 (6th Cir. 1999)(en banc)(there are a "potentially infinite number of factors which may warrant a departure");

18 U.S.C. § 3661 ("no limitation shall be placed on the informant" a court can receive and consider for purposes of imposing an appropriate sentence). A departure is warranted if the case is "unusual enough for it to fall outside the heartland of cases in the guidelines." *Koon*, 518 U.S. at 92. The Guidelines "do not displace the traditional role of the district court in bringing compassion and common sense to the sentencing process . . ."

In areas where the Sentencing Commission has not spoken . . . district courts should not hesitate to use their discretion in devising sentences that provide individualized justice." *United States v. Williams*, 65 F. 3d 301, 309-310 (2d Cir. 1995). "This, too, must be remembered, however. It has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue." (Emphasis added).

We do not understand it to have been the congressional purpose to withdraw all sentencing discretion from the United States district judge." *Koon*, 518 U.S. at 112; *See*, 18 U.S.C. § 3553 (a)(the court "shall impose a sentence sufficient but not greater than necessary, to comply with [the purposes of sentencing]" (emphasis added). "District courts are particularly suited in determining whether a factor makes a case unusual, because they are informed by [their] vantage point and day-to-day experience in criminal sentencing." *United States v. Aguirre*, 214 F. 3d 1122, 1127 (9th Cir. 2000)(quoting *Koon*, 518 U.S. at 98).

Certain offender characteristics may be relevant to the determination of whether a sentence should be outside the applicable guideline range. *See*, USSG 5H, *Introductory Comment*.

Moreover, "A departure may be warranted in an exceptional case, even though the circumstance that forms the basis for the departure is taken into consideration in determining the guideline range, if the court determines that such circumstance is present

6

in the offense to a degree substantially . . . below, that which ordinarily is involved in that kind of offense." USSG 5K2.0 (a)(3).

a. <u>Specific offender characteristics</u>

The Criminal History of Mr. Germosen is unremarkable. He has never been previously convicted of a crime as an adult, nor has he ever been adjudicated delinquent as a juvenile. What is most impressive about his previous lack of involvement in the Criminal Justice System is that after migrating into the United States from the Dominican Republic as an adolescent, Mr. Germosen, who became a citizen of the United States in 1994, was subjected to extreme hatred and racism in his hometown of Charlestown, Massachusetts, which, at that time, was a community consisting of predominantly white Irish-Catholic residents with a then recent history of racist attitudes toward non-white members of that community. Mr. Germosen was often victimized in race-related incidents where he was called a "Spic," and was spat at. He did not speak English very well, and had difficulty in understanding why he was treated that way. Yet, while he routinely got into fights to defend his siblings and himself, he did not rely upon that type of treatment as an excuse for continued violent behavior. He abhorred violence. And, instead of seeking retribution against his antagonizers, Mr. Germosen worked to disarm the hatred by becoming actively involved in his community.

For instance, about the time he was attending Charlestown High School in the mid-1990's, Mr. Germosen participated in a program called, "Words, Not Weapons," which assisted people in understanding other cultures. Upon information and belief, the program was part of a series of innovative public safety strategies by Federal, State, and local governmental agencies, nonprofit community service organizations, businesses, religious leaders, parents, and resident stakeholders who developed several programs to address escalating youth violence in the City of Boston. Mr. Germosen participated in that program in an effort to address ongoing racial tensions in both his school and hometown community.

7

After graduating from high school, Mr. Germosen also became actively involved with *Sociedad Latina,* in Roxbury, Massachusetts, which is the oldest Latino organization in the City of Boston whose mission is to enhance the overall wellbeing of the community by delivering programs that encourage community leadership through educational attainment, cultural identity, and continuation of traditions. *Sociedad Latina* fulfills this mission by combining direct service and advocacy with information/referral assistance, providing a human resource center for Boston's youth and families. Mr. Germosen remained actively involved in that program for approximately three years, working as a counselor, otherwise known as a "peer leader," and a youth worker.

Mr. Germosen has been gainfully employed throughout his adult life. After graduating high school, Mr. Germosen began working at *Sociedad Latina.* He worked at that organization for approximately three years before becoming employed in the automobile industry as a car-washer and, then, as an automobile sales representative.

In addition being gainfully employed, Mr. Germosen fathered five children with two different women. Although Mr. Germosen does not presently reside with either of those women, he does maintain a good relationship with both of them, remains involved in his children's lives, and provides financial support to both women for his children.

Mr. Germosen neither sells nor uses drugs.

In the circumstances, Mr. Germosen was enduring financial hardship resulting from off-season car sales, which, historically, slow down considerably during the cold winter months of January and February. Much to his regret, Mr. Germosen participated in heroin smuggling to off-set his lowered-income resulting from a reduction in car sales during the winter months of 2005. Nothing in his criminal history, or historical background, suggests any nexus between the offenses in the instant case and his personal or professional life. He is not a drug dealer. He neither sells nor uses drugs. By his own account, when given the opportunity to swallow twenty-five pellets in January 2005, he only swallowed ten pellets. And, subsequently, when given the opportunity to swallow

8

seventy-five pellets in March 2005, he only swallowed twenty-five pellets. He had no intention of profiting, directly, from the sale and distribution of heroin, yet, in effect, rented his own body for the transportation of narcotics.

Mr. Germosen is presently employed at Central Communications, located at 132 Central Street, in Lynn, Massachusetts, where he sells cellular telephone accessories. The business is owned by Mr. Germosen's mother. Together, they have been working on building a client-base for that business in and around the Lynn area. Mr. Germosen is hopeful that the business will become increasing profitable so that he can continue to support his children.

Mr. Germosen is a well-respected and productive member in his community, as evidenced by the letters attached hereto and incorporated herein as Exhibits 1 thru 4.

In a case involving a criminal sentencing appeal, the government challenged the trial court's downward departure. The sole issue on appeal was whether the trial judge abused his discretion in granting downward departure. The judge found that there were unusual mitigating circumstances in the case, namely, the adversity defendant had faced on the reservation and that defendant was only one semester away from receiving a college degree. The U.S. Sentencing Guidelines Manual provided that factors such as education and vocational skills, employment record, and family and community responsibility and ties were not ordinarily relevant in determining whether a sentence should be outside the guidelines range. The court held that although the sentencing guidelines were designed to achieve uniformity in federal sentencing, they also allowed discretion by the judge to depart. A decision to depart from sentencing guidelines would, in most cases, be given substantial deference, for it embodied traditional exercise of discretion by a sentencing court. The court concluded that decision to depart downward was within discretion retained by the sentencing court under the structure of the U.S Sentencing Guidelines. See, United States v. Decora, 177 F.3d 676 (8th Cir. 1999).

9

Similarly, like defendant Decora, Mr. Germosen faced adversity in the hate-filled and racially-charged streets of Charlestown when he was often tormented by residents in that community because of his Hispanic ethnicity. Yet, despite that adversity, Mr. Germosen dealt with it in a very positive manner. Rather than becoming part of the problems often associated with youth violence, he sought solutions to address it. More recently, Mr. Germosen has been working to cultivate and develop a small-family owned business, in Lynn, Massachusetts, with hope that it will become sufficiently profitable to support his mother, his children, and himself while improving the quality of life for residents of the Lynn community.

b. Substantial Assistance v. Rehabilitation

"A defendant's assistance to authorities in the investigation of criminal activities has been recognized in practice and by statute as a mitigating sentencing factor." *See,* USSG § 5K1.1, *Commentary, Background Notes*. "The nature, extent, and significance of assistance can involve a broad spectrum of conduct that must be evaluated by the court on an individual basis. Latitude is, therefore, afforded the sentencing judge to reduce a sentence based upon variable relevant factors . . . ." *Id.*

However, Mr. Germosen recognizes that this Court can not grant a substantial assistance departure without a motion from the government pursuant to § 5K1.1. *See, United States v. Maldonado-Acosta*, 210 F.3d 1182 (10th Cir. 2000).

Yet, a district court may depart downward to account for post-conviction (or post-sentence) rehabilitation when such rehabilitation is present to an exceptional degree or in some other way makes the case different from the ordinary case where the factor is present. For such rehabilitation to qualify for the downward departure, it must far exceed that required for eligibility for the acceptance-of-responsibility sentence reduction of U.S. Sentencing Guidelines Manual § 3E1.1, and must seem extraordinary or exceptional when compared to the rehabilitation of other defendants. Moreover, a sentencing court may grant the departure only when the extraordinary rehabilitation takes the case out of

the heartland anticipated by the guidelines. See, *United States v. Carruthers,* 28 Fed. Appx. 405 (6th Cir. 2002).

Here, Mr. Germosen cooperated with federal authorities immediately following his arrest and continued to cooperate despite pleading guilty to each offense in the instant case on November 7, 2005. Mr. Germosen contends that his cooperation amounts to rehabilitation in his efforts to remain out of prison. In other words, Mr. Germosen has made concrete gains toward turning his life around by cooperating with federal authorities; severing ties with possible co-conspirators, particularly the target of the federal investigation with which he cooperated; proposing to obtain employment at the same workplace as that target in an effort to ingratiate himself with that person, once again, win over that person's trust and confidence, and then submit to an electronic recording device in an effort to record incriminating statements from that individual. Inexplicably, Mr. Germosen's plan was rejected by federal authorities who, contemporaneous with Mr. Germosen's desire to increase his level of cooperation, made disclosures to the target which, in effect, frustrated Mr. Germosen's desire to continue his cooperation.

Herein, at minimum, a combination of the foregoing factors merits downward departure beyond that which is sought by the government.

## PROPOSED SENTENCE

Mr. Germosen has never been incarcerated, nor has he ever served a probationary sentence. He has a *de minimus* criminal history without any adult convictions or juvenile adjudications. Upon information and belief, Mr. Germosen has complied with the terms of his release in the instant case. Further, as aforesaid, he works in a small-family business, which is owned by his mother. His incarceration would eviscerate hard earned time spent developing that business, adversely impact its' continued growth and development and, in a philosophical sense, punish him beyond that which he has not only punished himself, but taken upon himself rehabilitative measures, the type envisions

11

exactly by incarceration.  While Mr.Germosen has pleaded guilty, provided substantial assistance to the government, has acknowledged his guilt, and stands ready to responsibly face his sentence, he asks this Honorable Court for an infusion of latitude and leniency in the imposition of sentence.  Mr.. Germosen is not fitting within the classic profile of a seasoned "drug smuggler," "drug courier," or person even remotely-rooted in narcotics distribution activity.

For all of the foregoing reasons, Mr. Germosen respectfully recommends that this Honorable Court consider imposing the following sentence:

1. A thirty-six month term of supervised probation, such an arrangement to enable Mr. Germosen to remain gainfully employed, prevent his family's business from suffering unnecessary hardship, and allow him to continue supporting his children while maintaining a relationship with each of them.
2. A fine commensurate with the resources expended by the government in its prosecution of this case or, in any event, not to exceed $5,000.00.
3. A Special Assessment of $200.00, which shall be paid forthwith.

FOR THE DEFENDANT,
YOHAN A. GERMOSEN

By his attorney:

_____
John H. Molloy, BBO # 600778
Sean F. Donahue, BBO # 558058
385 Broadway, Suite 402
Revere, MA   02151

CERTIFICATE OF SERVICE

I certify that on this date, I served the foregoing documents by electronic mailing upon AUSA Lisa Asiaf and by facsimile transmission to Probation Officer Denise Rivera.

_____
John H. Molloy

12

# Santo Domingo Grocery

158 Chestnut St
Lynn Ma, 01902
781-592-2260

**EXHIBIT 1**

To whom it may concern:

I Rudy Rosa am a local business owner in the city of Lynn, I have known Yohan Germosen and his family for almost 4 years. I have always known him to be a hard working man, he has helped all of us with car problems due to the fact that he is a car sales man, and one of the best to my knowledge. I have needed a hand many times and Yohan has always helped as much as he has can, if there is anything that I can do to help him I will try my best to give him a hand. If there is anything that I can provide you with please don't hesitate to contact me my information is listed above.

Sincerely,

*[signature]*

Rudy Rosa

**Maria Fernandez**
407 Meridian St
E. Boston Ma, 02128
(857) 891-5617

**EXHIBIT 2**

To whom it may concern:

    I am a Maria Fernandez and I am a very close friend of Yohan Germosen and his family, I know them for almost 10 years. When I came to Boston Yohan's family was the one who gave me a hand and helped me with the things that were in need. I know him to be a very hard worker and a very caring person, he is always looking for a way to help those in need and is very responsible when it comes to things he sets his mind to. Yohan is a bright young man and I am pretty sure that he will over come any obstacles that are put in his way, because when you are a kind hearted person good things come to you even if they delay in time. For many years I have followed this family through there journey to progress, Yohan mother Cary is also a very hard working woman who has struggled alone to raise her 4 kids, and she has had to work many years and very hard, but she has brought them to solid floors were they can know walk on their own feet and make their own choices in life. I know Yohan is a good kid and he has a great family. If there is anything that I can do for you please let me know.

Thank You

Sincerely,
Maria Fernandez

**EXHIBIT 3**

343 Dillingham Ave
Falmouth, MA 02540
508-548-1900

February 14, 2006

To whom it may concern,

I first became acquainted with Yohan Germosen in December of 2000. I personally hired him to work as a Lot Attendant at Northshore Buick, Pontiac GMC in Malden, MA. As I observed Yohan's work, I found he always put forth his best efforts and showed leadership abilities. Approximately six months later he came to me and requested a chance to move into my Sales Department as he was looking to improve the quality of life for his family.

I remembered myself 20 years before, an immigrant looking for a chance to show what I could do, and gave him the chance. I have never been sorry in my decision to promote Yohan, his reputation in the business stands for itself. Given the opportunity, I would hire him as a Sales Manager at my newly purchased Dealership and help him to realize his true potential.

If you have any questions or wish to speak to me personally, please contact me at the numbers listed below.

Thank you,

**Paul J DiBonaventura**
**President**
**Lighthouse Ford**
**Falmouth, MA**
**Work- 508-548-1900**
**Cell - 978-502-0433**

Fax -508-540-8263

*dibonaven@aol.com*

# Classic Realty

425 Western Avenue
Lynn, MA 01904
(781) 581-8308 ~ (781) 581-8328 Fax
www.classicrealtyofma.com

**EXHIBIT 4**

March 6, 2006

To Whom It May Concern:

This letter serves as our recommendation of Yohan Gemosen, of whom we have personally known for over four years.

His mother is a client of ours – which is how we came to know Yohan.

He is a hardworking young man – he is dependable and self-motivated. Yohan handles himself with poise and professionalism above and beyond his years.

We feel he has a great future in all his endeavors. Feel free to contact me directly for additional comments.

Sincerely,

*Miguelina Valdez*
Miguelina Valdez
Broker Realtor
Classic Realty