# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

_____
                                            )
**UNITED STATES OF AMERICA**                )
                                            )
            **v.**                          )        **Crim. No.  05-cr-10120-NG**
                                            )
**YOHAN A. GERMOSEN,**                      )
                    **Defendant.**          )
_____)

## GOVERNMENT'S RESPONSE
## TO DEFENDANT'S SENTENCING MEMORANDUM

The United States of America respectfully submits this response to the defendant's Sentencing

Memorandum in the above referenced matter.

### A.    The Presentence Report ("PSR")

According to the PSR, the defendant, Yohan A. Germosen ("Germosen"), faces the following

statutory and U.S.S.G. penalties:

- Statutory Penalties (21 U.S.C. § 960(b)(2)(A) and 18 U.S.C. § 3013)
  - Imprisonment for a term of at least 5 years up to 40 years;
  - Term of Supervised Release of at least 4 years up to life;
  - Fine up to $2 million (per count); and
  - Mandatory special assessment of $100 (per count).

- U.S.S.G. Penalties
  - Guideline Sentencing Range ("GSR") of 46-57 months imprisonment;
  - Term of Supervised Release of at least 4 years; and
  - Fine up to $10,000 up to $4 million.

See PSR at ¶¶ 115-29.  If the Court finds that Germosen meets the criteria set forth at 18 U.S.C. §

3553(f)(1)-(5) and U.S.S.G. § 5C1.2(a)(1)-(5), then it shall sentence him without regard to the

statutory minimum sentence set forth above and the U.S.S.G. penalties will be revised to a term of

imprisonment of **37-46 months** and a term of supervised release of at least 3 years, but not more than

5 years, under U.S.S.G.  § 5D1.2(a).  See PSR at ¶¶ 116-18, 122-23.

### B.  Defendant's Recommendation

Germosen urges this Court to find that he has, in fact, met the criteria set forth at 18 U.S.C. § 3553(f)(1)-(5) and U.S.S.G. § 5C1.2(a)(1)-(5), and to depart from the otherwise applicable mandatory minimum sentence of 5 years imprisonment and 4 years of supervised release to:

- No term of imprisonment (or time-served of 4 days);
- 36 months of Supervised Release;
- Fine up to $5,000; and
- Mandatory special assessment of $200.

See Deft.'s Sent. Memo (Mar. 13, 2006) at 12.  In support of this recommendation, Germosen argues that such a significant downward departure is warranted because:

(1)  he meets the "safety valve" criteria;

(2)  he has rendered "substantial assistance" despite the government's determination otherwise; and

(3)  mitigating circumstances (*i.e.*, Germosen's specific offender characteristics and "post-conviction rehabilitation") warrant such a substantial departure.

See id. at 3-12.  The government's response to each of these arguments is addressed in turn:

### C.  Government's Response

#### 1.  "Safety-Valve" Criteria

The government agrees that Germosen meets the "safety-valve" criteria set forth in 18 U.S.C. § 3553(f)(2-5) and U.S.S.G. § 5C1.2(a)(2-5).  Accordingly, if the Court finds that Germosen does not have more than one criminal history point for purposes of § 3553(f)(1) and § 5C1.2(a)(1), then the government agrees that: (i) Germosen is entitled to a 2-level decrease of his Base Offense Level under U.S.S.G. § 2D1.1(b)(7), resulting in a G.S.R. of **37-46 months**, and (ii) the Court shall sentence him without regard to the otherwise applicable statutory minimum sentence.

#### 2.  Defendant's "Substantial Assistance" Argument

The government respectfully disagrees with Germosen's assertion that he has "rendered

2

'substantial assistance' in the investigation of another person" and therefore warrants a downward departure under U.S.S.G. § 5K1.1 despite the government's determination otherwise.  See Deft.'s Sent. Memo. at 4.  As an initial matter, this issue is explicitly addressed in Germosen's own Plea Agreement.  At Paragraph 6(b), the parties specifically agreed that "[t]he determination whether Defendant has provided substantial assistance rests solely in the discretion of the U.S. Attorney and is not subject to appeal or review."  See Plea Agreement (attached to PSR) at ¶ 6(b) (emphasis added).  In light of this explicit agreement, the Court should not entertain Germosen's argument that he that he has, in fact, rendered "'substantial assistance' in the investigation of another person."  See United States v. Rodriquez-Gonzalez, 433 F.3d 165, 168 (1st Cir. 2005) (noting defendants ordinarily held to stipulations in plea agreement and that problem arises where "a defendant seems to disavow his stipulations without seeking to set aside the plea agreement").

Moreover, Germosen's substantial assistance departure request is not supported by either fact or law.  First, although Germosen did, in fact, attempt to help the government obtain useful evidence against one of his co-conspirators in the heroin importation operation, the information he ultimately provided simply did not assist the government in pursuing that co-conspirator, or anyone else involved in the importation operation.  During the course of his cooperation, Germosen: (i) appeared for a proffer at which he identified his recruiter; (ii) spoke with agents employed by Immigration and Customs Enforcement ("ICE"); (iii) wore a wire during two conversations with the target of the investigation; and (iv) had one recorded telephone conversation with the target.  Unfortunately, however, Germosen's efforts did not produce any information of use to the government, and simply did not rise to the level of "substantial assistance" for purposes of a 5K1.1 downward departure.

Second, Germosen offers no legal support for this aspect of his departure request.  The reason, of course, is that the cases have uniformly rejected his claim and consistently require the filing of a

§ 5K1 motion before a guideline departure can be granted.  E.g., United States v. Romolo, 937 F.2d 20, 23 (1st Cir. 1991) ("a district court may not depart pursuant to section 5K1.1 absent a government motion seeking such a departure"); United States v. El-Gheur, 201 F.3d 90, 94 (2d Cir. 2000) ("[a] District Court may grant a downward departure under § 5K1.1 based on substantial assistance to the government in an investigation or prosecution only upon motion by the government"); United States v. Watson, 57 F.3d 1093, (D.C. Cir. 1995) (departure based on attempt to cooperate unavailable absent filing of 5K1 motion); United States v. Aslakson, 982 F.2d 283, 284 (8th Cir. 1992) (willingness to cooperate and testify against others is not extraordinary acceptance of responsibility and can be rewarded only by 5K1 motion); see also U.S.S.G. § 5K1.1 Applic. N. 3 ("[s]ubstantial weight should be given to the government's evaluation of the extent of the defendant's assistance"). For all of these reasons, a departure under U.S.S.G. § 5K1.1 is simply not warranted.[1]

**3.     3553(a) Mitigating Circumstances / Post Conviction Rehabilitation**

After "begin[ning] with a guideline calculation, and ... after considering departures, the district court should [then] decide whether 'other factors' (beyond the guidelines) warrant[] an ultimate sentence above or below the guideline range."  United States v. Corey Smith, 445 F.3d 1, 4 (1st Cir. 2006).  According to Germosen, such "other factors," including his "specific offender characteristics" and "post-conviction rehabilitation," warrant an ultimate sentence of 0 months of imprisonment and 36 months of supervised release.  See Deft.'s Sent. Memo at 12.  For the reasons set forth below, such an extraordinary departure below the GSR (37-46 months imprisonment) is

---

[1] Although the Second Circuit has recently held that "non-5K cooperation" may be considered under 18 U.S.C. § 3553(a)(1) (history and characteristics of the defendant), see United States v. Fernandez, 443 F.3d 19 (2nd Cir. 2006), the government is unaware of, and defendant has not cited, any First Circuit decision supporting this view.  Moreover, even if this Court were to consider Germosen's cooperation under § 3553(a)(1), for all of the reasons set forth in Section C(3) of this memorandum, § 3553(a) does not support the extraordinary departure sought by Germosen.

neither reasonable nor justified.

First, the sentence sought by Germosen is not "sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2)" of § 3553(a). According to this provision, the Court must impose a sentence that reflects the seriousness of the offense, promotes respect for the law, provides just punishment for the offense, affords adequate deterrence, protects the public, and provides Germosen with any necessary correctional treatment. See 18 U.S.C. § 3553(a). In making this determination, the Court must consider the factors set forth in § 3553(a)(1)-(7). A review of those factors supports a sentence at the low-end of the GSR, *i.e.,* 37 months imprisonment, 4 years of supervised release, a fine of $10,000 (unless the Court find the defendant is unable to pay such fine), and a mandatory special assessment of $200.

**§ 3553(a)(1)** – Although the government recognizes that Germosen's history includes various mitigating circumstances, such as a clean criminal history and efforts to combat racial tensions in his community, § 3553(a)(1) also requires the Court to consider the "nature and circumstances of the offense." Here, Germosen committed a very serious offense, importing a total of roughly **362.8 grams of heroin** into the United States, while working collaboratively with a co-conspirator who imported at least 106.7 additional grams of heroin into the country. Germosen acknowledged this significant drug weight in his "safety-valve" proffer. Despite the fact that heroin is one of the most destructive drugs in our nation, Germosen smuggled it into the country in order to make some "easy cash." He did so despite the destruction if would cause to the ultimate end-users. It is the government's position that when balanced against the destructive nature and seriousness of this offense, the mitigating offender characteristics highlighted by the defendant do not support the significant sentencing deviation sought by the defendant.

5

This is especially true where one of the main offender characteristics highlighted by Germosen is his lack of criminal history. This factor is already taken into consideration in reaching the GSR from which Germoson seeks a departure. Specifically, the only reason that Germosen's GSR is 37-46 months of imprisonment despite the significant drug weight at issue is because: (i) his Criminal History Category is I and (ii) he received a 2-level "safety-valve" adjustment. See U.S.S.G. § 2D1.1(b)(7) ("safety-valve" adjustment), § 4A1.1 (Criminal History Category). Further consideration of Germosen's criminal history under § 3553(a)(1) is simply not warranted.

The Court should also disregard Germosen's argument that § 3553(a)(1) supports a significant deviation because "when given the opportunity to swallow twenty-five pellets in January 2005, he only swallowed ten pellets" and "when given the opportunity to swallow seventy-five pellets in March 2005, he only swallowed twenty-five pellets." Deft.'s Sent. Memo. at 8-9. During his safety-valve proffer, Germosen told the government that he swallowed 10 pellets in January 2005 and 24 pellets in March 2005 because that was all he could physically manage to swallow. He wanted to swallow more in order to make more money ($100 per pellet) and to get reimbursed for his airline ticket, but he simply could not get any more pellets down his throat. Germosen's suggestion that the number of pellets he ultimately swallowed constitutes a "mitigating circumstance" should be rejected.

Finally, Germosen's claim of "post-conviction rehabilitation" is also insufficient to support a deviation. Because such claims have already been taken into account by the Commission, they can only provide the Court with grounds to depart if they are present to an *exceptional degree*. E.g., United States v. Craven, 239 F.3d 91, 99 (1st Cir. 2001) (noting that "presentence rehabilitation ... can be factored adequately into the sentencing equation by an acceptance-of-responsibility credit"); United States v. Sklar, 920 F.2d 107, 115-16 (1st Cir. 1990) (such departures are to be granted sparingly).

Here, Germosen argues that "his cooperation amounts to rehabilitation in his efforts to remain out of prison." Deft.'s Sent. Memo. at 11. The government urges the Court to reject this argument. First, "cooperation" and "rehabilitation" are two different animals. "Rehabilitation" is to restore oneself to a normal, healthy state or position, such as when a drug addict restores himself to a drug-free life through substance abuse treatment and self restraint. E.g., United States v. Wilkes, 130 F.Supp.2d 222 (D.Mass. 2001) (finding extraordinary post-arrest rehabilitation where defendant remained drug-free after a decade of drug abuse). There is no such "rehabilitation" here. Germosen led a crime-free life before engaging in the criminal activity for which he is presently before the Court, and then simply complied with the law, his conditions of pretrial release, and his Plea Agreement, which required him to refrain from committing any new offenses and to cooperate fully with the government.

Second, even if this Court were to consider Germosen's post-arrest efforts under § 3553, those efforts were simply not substantially atypical to warrant a departure from the applicable GSR. As discussed above, although laudable, Germosen's cooperation simply did not render any productive assistance to the government. Not only are such circumstances already factored in by the Commission, but such efforts simply do not overcome the countervailing factors in § 3553 which support a guideline sentence.

**§ 3553(a)(4)** – The Court should also consider the fact that the GSR of 37-46 months is entitled to greater weight than all of the other factors in § 3553(a). United States v. Jimenez-Beltre, 440 F.3d 514 (1st Cir. 2006). In Jimenez-Beltre, the First Circuit approved of the district court's treatment of the GSR as having "substantial weight." Id. at 516. In doing so, the Court explained that "the guidelines cannot be called just 'another factor' in the statutory list, 18 U.S.C. § 3553(a) (2000), because they are the only integration of the multiple factors and, with important exceptions,

their calculations were based upon the actual sentences of many judges." Id. at 518. The Court further explained that "[t]he Sentencing Commision is also an expert agency charged by Congress with the task of promulgating guidelines and keeping them up to date." Id.

This is especially true where, as here, the drug weight is on the high end of the weight range that defined the defendant's Base Offense Level. Here, as stated in the PSR, Germosen is responsible for **362.8 grams of heroin** based on two separate acts of importing heroin into the United States – 10 pellets (approximately 106.7 grams) in January 2005 and 24 pellets (256.1 grams) in March 2005. His Base Offense Level is therefore 26, based on drug weight of 100-400 grams of heroin. U.S.S.G. § 2D1.1(c)(7). The extensive downward departure sought by Germosen is simply not justified.

**§ 3553(a)(6)** – Finally, the Court should consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct" under § 3553(a)(6). Defendants with similar criminal records (yielding a Criminal History Category of I), who have been convicted of similar conduct (yielding a Base Offense Level of 26 based on the U.S.S.G. Drug Quantity Table) also face a GSR of 37-46. Imposing a sentence at the low-end of the GSR would satisfy the need to avoid unwarranted sentence disparities among similar defendants.

Dated: June 11, 2006                          Respectfully submitted,

                                              MICHAEL J. SULLIVAN
                                              United States Attorney


                                   By:    __/s/ Lisa M. Asiaf_____
                                          LISA M. ASIAF
                                          Assistant U.S. Attorney
                                          Tel: (617) 748-3268

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and a hard copy will also be sent to defendant's counsel by facsimile on June 11, 2006.

_/s/ Lisa M. Asiaf_
LISA M. ASIAF
Assistant U.S. Attorney

# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

_____

                                                    )
**UNITED STATES OF AMERICA**        )
                                                    )
            **v.**                                  )          **Crim. No.  05-cr-10120-NG**
                                                    )
**YOHAN A. GERMOSEN,**               )
                            **Defendant.**     )
_____)

## GOVERNMENT'S RESPONSE
## TO DEFENDANT'S SENTENCING MEMORANDUM

The United States of America respectfully submits this response to the defendant's Sentencing

Memorandum in the above referenced matter.

**A.        The Presentence Report ("PSR")**

According to the PSR, the defendant, Yohan A. Germosen ("Germosen"), faces the following

statutory and U.S.S.G. penalties:

- Statutory Penalties (21 U.S.C. § 960(b)(2)(A) and 18 U.S.C. § 3013)
    - Imprisonment for a term of at least 5 years up to 40 years;
    - Term of Supervised Release of at least 4 years up to life;
    - Fine up to $2 million (per count); and
    - Mandatory special assessment of $100 (per count).

- U.S.S.G. Penalties
    - Guideline Sentencing Range ("GSR") of 46-57 months imprisonment;
    - Term of Supervised Release of at least 4 years; and
    - Fine up to $10,000 up to $4 million.

See PSR at ¶¶ 115-29.  If the Court finds that Germosen meets the criteria set forth at 18 U.S.C. §

3553(f)(1)-(5) and U.S.S.G. § 5C1.2(a)(1)-(5), then it shall sentence him without regard to the

statutory minimum sentence set forth above and the U.S.S.G. penalties will be revised to a term of

imprisonment of **37-46 months** and a term of supervised release of at least 3 years, but not more than

5 years, under U.S.S.G.  § 5D1.2(a).  See PSR at ¶¶ 116-18, 122-23.

**B.    Defendant's Recommendation**

Germosen urges this Court to find that he has, in fact, met the criteria set forth at 18 U.S.C. § 3553(f)(1)-(5) and U.S.S.G. § 5C1.2(a)(1)-(5), and to depart from the otherwise applicable mandatory minimum sentence of 5 years imprisonment and 4 years of supervised release to:

- No term of imprisonment (or time-served of 4 days);
- 36 months of Supervised Release;
- Fine up to $5,000; and
- Mandatory special assessment of $200.

See Deft.'s Sent. Memo (Mar. 13, 2006) at 12.  In support of this recommendation, Germosen argues that such a significant downward departure is warranted because:

(1)    he meets the "safety valve" criteria;

(2)    he has rendered "substantial assistance" despite the government's determination otherwise; and

(3)    mitigating circumstances (*i.e.*, Germosen's specific offender characteristics and "post-conviction rehabilitation") warrant such a substantial departure.

See id. at 3-12.  The government's response to each of these arguments is addressed in turn:

**C.    Government's Response**

**1.    "Safety-Valve" Criteria**

The government agrees that Germosen meets the "safety-valve" criteria set forth in 18 U.S.C. § 3553(f)(2-5) and U.S.S.G. § 5C1.2(a)(2-5).  Accordingly, if the Court finds that Germosen does not have more than one criminal history point for purposes of § 3553(f)(1) and § 5C1.2(a)(1), then the government agrees that: (i) Germosen is entitled to a 2-level decrease of his Base Offense Level under U.S.S.G. § 2D1.1(b)(7), resulting in a G.S.R. of **37-46 months**, and (ii) the Court shall sentence him without regard to the otherwise applicable statutory minimum sentence.

**2.    Defendant's "Substantial Assistance" Argument**

The government respectfully disagrees with Germosen's assertion that he has "rendered

'substantial assistance' in the investigation of another person" and therefore warrants a downward departure under U.S.S.G. § 5K1.1 despite the government's determination otherwise.  See Deft.'s Sent. Memo. at 4.  As an initial matter, this issue is explicitly addressed in Germosen's own Plea Agreement.  At Paragraph 6(b), the parties specifically agreed that "[t]he determination whether Defendant has provided substantial assistance rests solely in the discretion of the U.S. Attorney and is not subject to appeal or review."  See Plea Agreement (attached to PSR) at ¶ 6(b) (emphasis added).  In light of this explicit agreement, the Court should not entertain Germosen's argument that he that he has, in fact, rendered "'substantial assistance' in the investigation of another person."  See United States v. Rodriquez-Gonzalez, 433 F.3d 165, 168 (1st Cir. 2005) (noting defendants ordinarily held to stipulations in plea agreement and that problem arises where "a defendant seems to disavow his stipulations without seeking to set aside the plea agreement").

Moreover, Germosen's substantial assistance departure request is not supported by either fact or law.  First, although Germosen did, in fact, attempt to help the government obtain useful evidence against one of his co-conspirators in the heroin importation operation, the information he ultimately provided simply did not assist the government in pursuing that co-conspirator, or anyone else involved in the importation operation.  During the course of his cooperation, Germosen: (i) appeared for a proffer at which he identified his recruiter; (ii) spoke with agents employed by Immigration and Customs Enforcement ("ICE"); (iii) wore a wire during two conversations with the target of the investigation; and (iv) had one recorded telephone conversation with the target.  Unfortunately, however, Germosen's efforts did not produce any information of use to the government, and simply did not rise to the level of "substantial assistance" for purposes of a 5K1.1 downward departure.

Second, Germosen offers no legal support for this aspect of his departure request.  The reason, of course, is that the cases have uniformly rejected his claim and consistently require the filing of a

§ 5K1 motion before a guideline departure can be granted.  E.g., United States v. Romolo, 937 F.2d 20, 23 (1st Cir. 1991) ("a district court may not depart pursuant to section 5K1.1 absent a government motion seeking such a departure"); United States v. El-Gheur, 201 F.3d 90, 94 (2d Cir. 2000) ("[a] District Court may grant a downward departure under § 5K1.1 based on substantial assistance to the government in an investigation or prosecution only upon motion by the government"); United States v. Watson, 57 F.3d 1093, (D.C. Cir. 1995) (departure based on attempt to cooperate unavailable absent filing of 5K1 motion); United States v. Aslakson, 982 F.2d 283, 284 (8th Cir. 1992) (willingness to cooperate and testify against others is not extraordinary acceptance of responsibility and can be rewarded only by 5K1 motion); see also U.S.S.G. § 5K1.1 Applic. N. 3 ("[s]ubstantial weight should be given to the government's evaluation of the extent of the defendant's assistance"). For all of these reasons, a departure under U.S.S.G. § 5K1.1 is simply not warranted.[1]

### 3.    3553(a) Mitigating Circumstances / Post Conviction Rehabilitation

After "begin[ning] with a guideline calculation, and ... after considering departures, the district court should [then] decide whether 'other factors' (beyond the guidelines) warrant[] an ultimate sentence above or below the guideline range."  United States v. Corey Smith, 445 F.3d 1, 4 (1st Cir. 2006).  According to Germosen, such "other factors," including his "specific offender characteristics" and "post-conviction rehabilitation," warrant an ultimate sentence of 0 months of imprisonment and 36 months of supervised release.  See Deft.'s Sent. Memo at 12.  For the reasons set forth below, such an extraordinary departure below the GSR (37-46 months imprisonment) is

---

[1] Although the Second Circuit has recently held that "non-5K cooperation" may be considered under 18 U.S.C. § 3553(a)(1) (history and characteristics of the defendant), see United States v. Fernandez, 443 F.3d 19 (2nd Cir. 2006), the government is unaware of, and defendant has not cited, any First Circuit decision supporting this view.  Moreover, even if this Court were to consider Germosen's cooperation under § 3553(a)(1), for all of the reasons set forth in Section C(3) of this memorandum, § 3553(a) does not support the extraordinary departure sought by Germosen.

neither reasonable nor justified.

First, the sentence sought by Germosen is not "sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2)" of § 3553(a). According to this provision, the Court must impose a sentence that reflects the seriousness of the offense, promotes respect for the law, provides just punishment for the offense, affords adequate deterrence, protects the public, and provides Germosen with any necessary correctional treatment. <u>See</u> 18 U.S.C. § 3553(a). In making this determination, the Court must consider the factors set forth in § 3553(a)(1)-(7). A review of those factors supports a sentence at the low-end of the GSR, *i.e.,* 37 months imprisonment, 4 years of supervised release, a fine of $10,000 (unless the Court find the defendant is unable to pay such fine), and a mandatory special assessment of $200.

**§ 3553(a)(1)** – Although the government recognizes that Germosen's history includes various mitigating circumstances, such as a clean criminal history and efforts to combat racial tensions in his community, § 3553(a)(1) also requires the Court to consider the "nature and circumstances of the offense." Here, Germosen committed a very serious offense, importing a total of roughly **362.8 grams of heroin** into the United States, while working collaboratively with a co-conspirator who imported at least 106.7 additional grams of heroin into the country. Germosen acknowledged this significant drug weight in his "safety-valve" proffer. Despite the fact that heroin is one of the most destructive drugs in our nation, Germosen smuggled it into the country in order to make some "easy cash." He did so despite the destruction if would cause to the ultimate end-users. It is the government's position that when balanced against the destructive nature and seriousness of this offense, the mitigating offender characteristics highlighted by the defendant do not support the significant sentencing deviation sought by the defendant.

This is especially true where one of the main offender characteristics highlighted by Germosen is his lack of criminal history. This factor is already taken into consideration in reaching the GSR from which Germoson seeks a departure. Specifically, the only reason that Germosen's GSR is 37-46 months of imprisonment despite the significant drug weight at issue is because: (i) his Criminal History Category is I and (ii) he received a 2-level "safety-valve" adjustment. See U.S.S.G. § 2D1.1(b)(7) ("safety-valve" adjustment), § 4A1.1 (Criminal History Category). Further consideration of Germosen's criminal history under § 3553(a)(1) is simply not warranted.

The Court should also disregard Germosen's argument that § 3553(a)(1) supports a significant deviation because "when given the opportunity to swallow twenty-five pellets in January 2005, he only swallowed ten pellets" and "when given the opportunity to swallow seventy-five pellets in March 2005, he only swallowed twenty-five pellets." Deft.'s Sent. Memo. at 8-9. During his safety-valve proffer, Germosen told the government that he swallowed 10 pellets in January 2005 and 24 pellets in March 2005 because that was all he could physically manage to swallow. He wanted to swallow more in order to make more money ($100 per pellet) and to get reimbursed for his airline ticket, but he simply could not get any more pellets down his throat. Germosen's suggestion that the number of pellets he ultimately swallowed constitutes a "mitigating circumstance" should be rejected.

Finally, Germosen's claim of "post-conviction rehabilitation" is also insufficient to support a deviation. Because such claims have already been taken into account by the Commission, they can only provide the Court with grounds to depart if they are present to an *exceptional degree*. E.g., United States v. Craven, 239 F.3d 91, 99 (1st Cir. 2001) (noting that "presentence rehabilitation ... can be factored adequately into the sentencing equation by an acceptance-of-responsibility credit"); United States v. Sklar, 920 F.2d 107, 115-16 (1st Cir. 1990) (such departures are to be granted sparingly).

Here, Germosen argues that "his cooperation amounts to rehabilitation in his efforts to remain out of prison." Deft.'s Sent. Memo. at 11. The government urges the Court to reject this argument. First, "cooperation" and "rehabilitation" are two different animals. "Rehabilitation" is to restore oneself to a normal, healthy state or position, such as when a drug addict restores himself to a drug-free life through substance abuse treatment and self restraint. E.g., United States v. Wilkes, 130 F.Supp.2d 222 (D.Mass. 2001) (finding extraordinary post-arrest rehabilitation where defendant remained drug-free after a decade of drug abuse). There is no such "rehabilitation" here. Germosen led a crime-free life before engaging in the criminal activity for which he is presently before the Court, and then simply complied with the law, his conditions of pretrial release, and his Plea Agreement, which required him to refrain from committing any new offenses and to cooperate fully with the government.

Second, even if this Court were to consider Germosen's post-arrest efforts under § 3553, those efforts were simply not substantially atypical to warrant a departure from the applicable GSR. As discussed above, although laudable, Germosen's cooperation simply did not render any productive assistance to the government. Not only are such circumstances already factored in by the Commission, but such efforts simply do not overcome the countervailing factors in § 3553 which support a guideline sentence.

**§ 3553(a)(4)** – The Court should also consider the fact that the GSR of 37-46 months is entitled to greater weight than all of the other factors in § 3553(a). United States v. Jimenez-Beltre, 440 F.3d 514 (1st Cir. 2006). In Jimenez-Beltre, the First Circuit approved of the district court's treatment of the GSR as having "substantial weight." Id. at 516. In doing so, the Court explained that "the guidelines cannot be called just 'another factor' in the statutory list, 18 U.S.C. § 3553(a) (2000), because they are the only integration of the multiple factors and, with important exceptions,

their calculations were based upon the actual sentences of many judges." Id. at 518. The Court further explained that "[t]he Sentencing Commision is also an expert agency charged by Congress with the task of promulgating guidelines and keeping them up to date." Id.

This is especially true where, as here, the drug weight is on the high end of the weight range that defined the defendant's Base Offense Level. Here, as stated in the PSR, Germosen is responsible for **362.8 grams of heroin** based on two separate acts of importing heroin into the United States – 10 pellets (approximately 106.7 grams) in January 2005 and 24 pellets (256.1 grams) in March 2005. His Base Offense Level is therefore 26, based on drug weight of 100-400 grams of heroin. U.S.S.G. § 2D1.1(c)(7). The extensive downward departure sought by Germosen is simply not justified.

**§ 3553(a)(6)** – Finally, the Court should consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct" under § 3553(a)(6). Defendants with similar criminal records (yielding a Criminal History Category of I), who have been convicted of similar conduct (yielding a Base Offense Level of 26 based on the U.S.S.G. Drug Quantity Table) also face a GSR of 37-46. Imposing a sentence at the low-end of the GSR would satisfy the need to avoid unwarranted sentence disparities among similar defendants.

Dated: June 11, 2006                              Respectfully submitted,

                                                  MICHAEL J. SULLIVAN
                                                  United States Attorney


                                          By:      */s/ Lisa M. Asiaf*
                                                  LISA M. ASIAF
                                                  Assistant U.S. Attorney
                                                  Tel: (617) 748-3268

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and a hard copy will also be sent to defendant's counsel by facsimile on June 11, 2006.

<u>        */s/ **Lisa M. Asiaf**                          </u>
LISA M. ASIAF
Assistant U.S. Attorney

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

```
_____
                                        )
UNITED STATES OF AMERICA                )
                                        )
        v.                              )      Crim. No.  05-cr-10120-NG
                                        )
YOHAN A. GERMOSEN,                      )
                Defendant.              )
_____)
```

**GOVERNMENT'S RESPONSE**
**TO DEFENDANT'S SENTENCING MEMORANDUM**

The United States of America respectfully submits this response to the defendant's Sentencing

Memorandum in the above referenced matter.

**A.    The Presentence Report ("PSR")**

According to the PSR, the defendant, Yohan A. Germosen ("Germosen"), faces the following

statutory and U.S.S.G. penalties:

- Statutory Penalties (21 U.S.C. § 960(b)(2)(A) and 18 U.S.C. § 3013)
    - Imprisonment for a term of at least 5 years up to 40 years;
    - Term of Supervised Release of at least 4 years up to life;
    - Fine up to $2 million (per count); and
    - Mandatory special assessment of $100 (per count).

- U.S.S.G. Penalties
    - Guideline Sentencing Range ("GSR") of 46-57 months imprisonment;
    - Term of Supervised Release of at least 4 years; and
    - Fine up to $10,000 up to $4 million.

See PSR at ¶¶ 115-29. If the Court finds that Germosen meets the criteria set forth at 18 U.S.C. §

3553(f)(1)-(5) and U.S.S.G. § 5C1.2(a)(1)-(5), then it shall sentence him without regard to the

statutory minimum sentence set forth above and the U.S.S.G. penalties will be revised to a term of

imprisonment of **37-46 months** and a term of supervised release of at least 3 years, but not more than

5 years, under U.S.S.G. § 5D1.2(a). See PSR at ¶¶ 116-18, 122-23.

### B.    **Defendant's Recommendation**

Germosen urges this Court to find that he has, in fact, met the criteria set forth at 18 U.S.C. § 3553(f)(1)-(5) and U.S.S.G. § 5C1.2(a)(1)-(5), and to depart from the otherwise applicable mandatory minimum sentence of 5 years imprisonment and 4 years of supervised release to:

- No term of imprisonment (or time-served of 4 days);
- 36 months of Supervised Release;
- Fine up to $5,000; and
- Mandatory special assessment of $200.

See Deft.'s Sent. Memo (Mar. 13, 2006) at 12. In support of this recommendation, Germosen argues that such a significant downward departure is warranted because:

(1)    he meets the "safety valve" criteria;

(2)    he has rendered "substantial assistance" despite the government's determination otherwise; and

(3)    mitigating circumstances (*i.e.*, Germosen's specific offender characteristics and "post-conviction rehabilitation") warrant such a substantial departure.

See id. at 3-12. The government's response to each of these arguments is addressed in turn:

### C.    **Government's Response**

### 1.    **"Safety-Valve" Criteria**

The government agrees that Germosen meets the "safety-valve" criteria set forth in 18 U.S.C. § 3553(f)(2-5) and U.S.S.G. § 5C1.2(a)(2-5). Accordingly, if the Court finds that Germosen does not have more than one criminal history point for purposes of § 3553(f)(1) and § 5C1.2(a)(1), then the government agrees that: (i) Germosen is entitled to a 2-level decrease of his Base Offense Level under U.S.S.G. § 2D1.1(b)(7), resulting in a G.S.R. of **37-46 months**, and (ii) the Court shall sentence him without regard to the otherwise applicable statutory minimum sentence.

### 2.    **Defendant's "Substantial Assistance" Argument**

The government respectfully disagrees with Germosen's assertion that he has "rendered

'substantial assistance' in the investigation of another person" and therefore warrants a downward departure under U.S.S.G. § 5K1.1 despite the government's determination otherwise.  See Deft.'s Sent. Memo. at 4.  As an initial matter, this issue is explicitly addressed in Germosen's own Plea Agreement.  At Paragraph 6(b), the parties specifically agreed that "[t]he determination whether Defendant has provided substantial assistance rests solely in the discretion of the U.S. Attorney and is not subject to appeal or review."  See Plea Agreement (attached to PSR) at ¶ 6(b) (emphasis added).  In light of this explicit agreement, the Court should not entertain Germosen's argument that he that he has, in fact, rendered "'substantial assistance' in the investigation of another person."  See United States v. Rodriquez-Gonzalez, 433 F.3d 165, 168 (1st Cir. 2005) (noting defendants ordinarily held to stipulations in plea agreement and that problem arises where "a defendant seems to disavow his stipulations without seeking to set aside the plea agreement").

Moreover, Germosen's substantial assistance departure request is not supported by either fact or law.  First, although Germosen did, in fact, attempt to help the government obtain useful evidence against one of his co-conspirators in the heroin importation operation, the information he ultimately provided simply did not assist the government in pursuing that co-conspirator, or anyone else involved in the importation operation.  During the course of his cooperation, Germosen: (i) appeared for a proffer at which he identified his recruiter; (ii) spoke with agents employed by Immigration and Customs Enforcement ("ICE"); (iii) wore a wire during two conversations with the target of the investigation; and (iv) had one recorded telephone conversation with the target.  Unfortunately, however, Germosen's efforts did not produce any information of use to the government, and simply did not rise to the level of "substantial assistance" for purposes of a 5K1.1 downward departure.

Second, Germosen offers no legal support for this aspect of his departure request.  The reason, of course, is that the cases have uniformly rejected his claim and consistently require the filing of a

§ 5K1 motion before a guideline departure can be granted.  <u>E.g.</u>, <u>United States v. Romolo</u>, 937 F.2d 20, 23 (1st Cir. 1991) ("a district court may not depart pursuant to section 5K1.1 absent a government motion seeking such a departure"); <u>United States v. El-Gheur</u>, 201 F.3d 90, 94 (2d Cir. 2000) ("[a] District Court may grant a downward departure under § 5K1.1 based on substantial assistance to the government in an investigation or prosecution only upon motion by the government"); <u>United States v. Watson</u>, 57 F.3d 1093, (D.C. Cir. 1995) (departure based on attempt to cooperate unavailable absent filing of 5K1 motion); <u>United States v. Aslakson</u>, 982 F.2d 283, 284 (8th Cir. 1992) (willingness to cooperate and testify against others is not extraordinary acceptance of responsibility and can be rewarded only by 5K1 motion); <u>see also</u> U.S.S.G. § 5K1.1 Applic. N. 3 ("[s]ubstantial weight should be given to the government's evaluation of the extent of the defendant's assistance"). For all of these reasons, a departure under U.S.S.G. § 5K1.1 is simply not warranted.[1]

### 3.    3553(a) Mitigating Circumstances / Post Conviction Rehabilitation

After "begin[ning] with a guideline calculation, and ... after considering departures, the district court should [then] decide whether 'other factors' (beyond the guidelines) warrant[] an ultimate sentence above or below the guideline range." <u>United States v. Corey Smith</u>, 445 F.3d 1, 4 (1st Cir. 2006).  According to Germosen, such "other factors," including his "specific offender characteristics" and "post-conviction rehabilitation," warrant an ultimate sentence of 0 months of imprisonment and 36 months of supervised release.  <u>See</u> Deft.'s Sent. Memo at 12.  For the reasons set forth below, such an extraordinary departure below the GSR (37-46 months imprisonment) is

---

[1] Although the Second Circuit has recently held that "non-5K cooperation" may be considered under <u>18 U.S.C. § 3553(a)(1)</u> (history and characteristics of the defendant), <u>see United States v. Fernandez</u>, 443 F.3d 19 (2nd Cir. 2006), the government is unaware of, and defendant has not cited, any First Circuit decision supporting this view.  Moreover, even if this Court were to consider Germosen's cooperation under § 3553(a)(1), for all of the reasons set forth in Section C(3) of this memorandum, § 3553(a) does not support the extraordinary departure sought by Germosen.

neither reasonable nor justified.

First, the sentence sought by Germosen is not "sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2)" of § 3553(a). According to this provision, the Court must impose a sentence that reflects the seriousness of the offense, promotes respect for the law, provides just punishment for the offense, affords adequate deterrence, protects the public, and provides Germosen with any necessary correctional treatment. See 18 U.S.C. § 3553(a). In making this determination, the Court must consider the factors set forth in § 3553(a)(1)-(7). A review of those factors supports a sentence at the low-end of the GSR, i.e., 37 months imprisonment, 4 years of supervised release, a fine of $10,000 (unless the Court find the defendant is unable to pay such fine), and a mandatory special assessment of $200.

**§ 3553(a)(1)** – Although the government recognizes that Germosen's history includes various mitigating circumstances, such as a clean criminal history and efforts to combat racial tensions in his community, § 3553(a)(1) also requires the Court to consider the "nature and circumstances of the offense." Here, Germosen committed a very serious offense, importing a total of roughly **362.8 grams of heroin** into the United States, while working collaboratively with a co-conspirator who imported at least 106.7 additional grams of heroin into the country. Germosen acknowledged this significant drug weight in his "safety-valve" proffer. Despite the fact that heroin is one of the most destructive drugs in our nation, Germosen smuggled it into the country in order to make some "easy cash." He did so despite the destruction if would cause to the ultimate end-users. It is the government's position that when balanced against the destructive nature and seriousness of this offense, the mitigating offender characteristics highlighted by the defendant do not support the significant sentencing deviation sought by the defendant.

This is especially true where one of the main offender characteristics highlighted by Germosen is his lack of criminal history. This factor is already taken into consideration in reaching the GSR from which Germoson seeks a departure. Specifically, the only reason that Germosen's GSR is 37-46 months of imprisonment despite the significant drug weight at issue is because: (i) his Criminal History Category is I and (ii) he received a 2-level "safety-valve" adjustment. See U.S.S.G. § 2D1.1(b)(7) ("safety-valve" adjustment), § 4A1.1 (Criminal History Category). Further consideration of Germosen's criminal history under § 3553(a)(1) is simply not warranted.

The Court should also disregard Germosen's argument that § 3553(a)(1) supports a significant deviation because "when given the opportunity to swallow twenty-five pellets in January 2005, he only swallowed ten pellets" and "when given the opportunity to swallow seventy-five pellets in March 2005, he only swallowed twenty-five pellets." Deft.'s Sent. Memo. at 8-9. During his safety-valve proffer, Germosen told the government that he swallowed 10 pellets in January 2005 and 24 pellets in March 2005 because that was all he could physically manage to swallow. He wanted to swallow more in order to make more money ($100 per pellet) and to get reimbursed for his airline ticket, but he simply could not get any more pellets down his throat. Germosen's suggestion that the number of pellets he ultimately swallowed constitutes a "mitigating circumstance" should be rejected.

Finally, Germosen's claim of "post-conviction rehabilitation" is also insufficient to support a deviation. Because such claims have already been taken into account by the Commission, they can only provide the Court with grounds to depart if they are present to an *exceptional degree*. E.g., United States v. Craven, 239 F.3d 91, 99 (1st Cir. 2001) (noting that "presentence rehabilitation ... can be factored adequately into the sentencing equation by an acceptance-of-responsibility credit"); United States v. Sklar, 920 F.2d 107, 115-16 (1st Cir. 1990) (such departures are to be granted sparingly).

Here, Germosen argues that "his cooperation amounts to rehabilitation in his efforts to remain out of prison." Deft.'s Sent. Memo. at 11. The government urges the Court to reject this argument. First, "cooperation" and "rehabilitation" are two different animals. "Rehabilitation" is to restore oneself to a normal, healthy state or position, such as when a drug addict restores himself to a drug-free life through substance abuse treatment and self restraint. E.g., United States v. Wilkes, 130 F.Supp.2d 222 (D.Mass. 2001) (finding extraordinary post-arrest rehabilitation where defendant remained drug-free after a decade of drug abuse). There is no such "rehabilitation" here. Germosen led a crime-free life before engaging in the criminal activity for which he is presently before the Court, and then simply complied with the law, his conditions of pretrial release, and his Plea Agreement, which required him to refrain from committing any new offenses and to cooperate fully with the government.

Second, even if this Court were to consider Germosen's post-arrest efforts under § 3553, those efforts were simply not substantially atypical to warrant a departure from the applicable GSR. As discussed above, although laudable, Germosen's cooperation simply did not render any productive assistance to the government. Not only are such circumstances already factored in by the Commission, but such efforts simply do not overcome the countervailing factors in § 3553 which support a guideline sentence.

**§ 3553(a)(4)** – The Court should also consider the fact that the GSR of 37-46 months is entitled to greater weight than all of the other factors in § 3553(a). United States v. Jimenez-Beltre, 440 F.3d 514 (1st Cir. 2006). In Jimenez-Beltre, the First Circuit approved of the district court's treatment of the GSR as having "substantial weight." Id. at 516. In doing so, the Court explained that "the guidelines cannot be called just 'another factor' in the statutory list, 18 U.S.C. § 3553(a) (2000), because they are the only integration of the multiple factors and, with important exceptions,

7

their calculations were based upon the actual sentences of many judges." Id. at 518. The Court further explained that "[t]he Sentencing Commision is also an expert agency charged by Congress with the task of promulgating guidelines and keeping them up to date." Id.

This is especially true where, as here, the drug weight is on the high end of the weight range that defined the defendant's Base Offense Level. Here, as stated in the PSR, Germosen is responsible for **362.8 grams of heroin** based on two separate acts of importing heroin into the United States – 10 pellets (approximately 106.7 grams) in January 2005 and 24 pellets (256.1 grams) in March 2005. His Base Offense Level is therefore 26, based on drug weight of 100-400 grams of heroin. U.S.S.G. § 2D1.1(c)(7). The extensive downward departure sought by Germosen is simply not justified.

**§ 3553(a)(6)** – Finally, the Court should consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct" under § 3553(a)(6). Defendants with similar criminal records (yielding a Criminal History Category of I), who have been convicted of similar conduct (yielding a Base Offense Level of 26 based on the U.S.S.G. Drug Quantity Table) also face a GSR of 37-46. Imposing a sentence at the low-end of the GSR would satisfy the need to avoid unwarranted sentence disparities among similar defendants.

Dated: June 11, 2006                    Respectfully submitted,

                                        MICHAEL J. SULLIVAN
                                        United States Attorney


                            By:      */s/ Lisa M. Asiaf*
                                        LISA M. ASIAF
                                        Assistant U.S. Attorney
                                        Tel: (617) 748-3268

## **CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and a hard copy will also be sent to defendant's counsel by facsimile on June 11, 2006.

_____*/s/ Lisa M. Asiaf*_____
LISA M. ASIAF
Assistant U.S. Attorney