# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

_____
                                    )
UNITED STATES OF AMERICA            )
                                    )
            v.                      )       Crim. No.  05-cr-10120-NG
                                    )
YOHAN A. GERMOSEN,                  )
            Defendant.              )
_____)

## GOVERNMENT'S SENTENCING BRIEF
## REGARDING ABERRANT BEHAVIOR

The United States of America (the "government") respectfully submits this brief regarding the aberrant behavior issue raised by the Court at the hearing in this matter on June 12, 2006. Specifically, this brief addresses the issue of post-Booker departures for aberrant behavior – *i.e.*, the scope of the Court's authority to grant the defendant, Yohan A. Germosen ("Germosen"), a downward departure based on aberrant behavior now that the U.S. Sentencing Guidelines are advisory.

### A.    U.S.S.G. § 5K2.20 – Aberrant Behavior

Section 5K2.20 of the U.S. Sentencing Guidelines (the "Guidelines") states, in relevant part, that:

> "a downward departure may be warranted in an exceptional case if (1) the defendant's criminal conduct meets the requirements of subsection (b); and (2) the departure is not prohibited under subsection (c)."

Subsection (b) provides that the Court may depart only if the defendant:

> "committed a single criminal occurrence or single criminal transaction that (1) was committed without significant planning; (2) was of limited duration; and (3) represents a marked deviation by the defendant from an otherwise law-abiding life."

Subsection (c) prohibits any departure, however, if, *inter alia*:

> "[t]he instant offense of conviction is a serious drug trafficking offense."

U.S.S.G. § 5K2.20. According to Application Note 1, a "serious drug trafficking offense" includes the two drug offenses for which Germosen has been convicted. See id., Applic. n.1 (defining "serious drug trafficking offense" as any drug offense under title 21, U.S. Code, other than simple possession, that carries a mandatory minimum term of imprisonment of five years or greater, regardless of whether defendant meets the "safety-valve" criteria).

If a departure is not prohibited by subsection (c), the Court must determine whether the requirements in subsection (b) are met. The Application Notes instruct that "[r]epetitious or significant, planned behavior does not meet the requirements of subsection (b)." U.S.S.G. § 5K2.20, Applic. n.2. The Application Notes also state that the Court may consider the following factors in making its determination:

- defendant's mental and emotional conditions;
- defendant's employment record;
- record of prior good works;
- motivation for committing the offense; and
- efforts to mitigate the effects of the offense.

See id., Applic. n. 3.

### B. Pre-Booker Consideration of Aberrant Behavior

The history of § 5K2.20 is instructive. When the Sentencing Commission originally wrote the Introduction to the Guidelines Manual, it did not address the issue of aberrant behavior. Instead, the Introduction in Chapter One of the Guidelines simply stated that "[t]he Commission, of course, has not dealt with the single acts of aberrant behavior that still may justify probation at higher offense levels through departures." See, e.g., U.S.S.G.(effective Nov. 1, 2000), Ch.1, Pt.A, Introduction at ¶ 4(d). As such, departures based on aberrant behavior "f[e]ll into the category embracing factors not previously considered by the Commission," United States v. Grandmaison, 77 F.3d 555 (1st Cir. 1995), and were governed by case law that began to interpret this single sentence in the Introduction.

United States v. Rivera-Rodriquez, 318 F.3d 268, 275 (1st Cir. 2003) (noting "case law developed, pearl-like, around a single longstanding sentence in an introductory comment to the effect that departures were not precluded for 'single acts of aberrant behavior'").

In Grandmaison, the First Circuit adopted a "totality of the circumstances" standard for determining the appropriateness of a departure for aberrant behavior. Id. at 563. Under that standard, the term "single" referred to the crime committed, such that a defendant's behavior could be "aberrant" even where multiple acts led up to the commission of a single crime. Id. at 563-64. Most circuit courts, however, adopted a more restrictive standard, defining "aberrant behavior" as a spontaneous and thoughtless single act. See U.S.S.G. App.C, Amendment 603 (discussing circuit conflict over how broadly to define "single act of aberrant behavior" for purposes of aberrant behavior departure).

In 2000, the Commission promulgated § 5K2.20 in response to this circuit conflict. Rather than adopt the "totality of circumstances" standard (as the First Circuit had in Grandmaison) or the more restrictive "single act" rule followed by most circuits, the Commission defined "aberrant behavior" in the express terms of § 5K2.20 and accompanying commentary. See U.S.S.G. App.C, Amendment 603. In doing so, the Commission noted that the "totality of circumstances" approach endorsed by the minority of circuits was "overly broad" and the "single act" rule endorsed by the majority of circuits was "overly restrictive." See id. Although the Commission has "tweaked" § 5K2.20 in two amendments passed in 2003 (see App. C, Amendment 649, effective Apr. 30, 2003; App.C, Amendment 651, effective Oct. 27, 2003), it has remained in the Guidelines ever since its promulgation in 2000.

Since that time, case law has developed, applying § 5K2.20 to a variety of circumstances. In United States v. Rivera-Rodriquez, 318 F.3d 268 (1st Cir. 2003), for example, the First Circuit

3

affirmed the district court's refusal to grant a downward departure under § 5K2.20 where a defendant convicted of money laundering "embraced a reasonably elaborate scheme of multiple deposits and transfers in the first transaction ... followed later by two more transactions...." Rivera-Rodriquez, 318 F.3d at 276.  According to the First Circuit, these circumstances precluded a finding that the defendant committed a "single" criminal occurrence "without significant planning" and of "limited duration," as required by § 5K2.20.  In discussing these requirements, the court noted that although "the third required characteristic – 'marked deviation ... from an otherwise law-abiding life' – is itself quite open-ended" .... "the first two are not open-ended:  they require a lack of significant planning and limited duration." Id. (emphasis added).

The following two cases concern the application of § 5K2.20 to drug couriers.  In Charles v. United States, 2003 WL 21184022 (D. Mass. 2003), the court considered whether defendant's attorney rendered ineffective assistance of counsel for failing to advocate for a lighter sentence based on various grounds for departure.  Like Germosen, the defendant was arrested at Logan; charged with conspiracy to import heroin and unlawful importation of heroin; agreed to cooperate with the government; and pled guilty to both counts in the indictment.  Id. at *1.  In considering the defendant's challenges to her sentence, the Court noted that although the defendant had reserved the right to seek a downward departure for aberrant behavior, defense counsel did not render ineffective assistance by failing to do so.  The court explained that:

> [t]he additional reserved ground of aberrant behavior is not pressed for the obvious reason that in seeking to qualify for the Safety Valve Provision, [defendant] admitted that she had been involved in a similar and successful importation scheme with the same coconspirators a year earlier. *See United States v. Catucci*, 55 F.3d 15, 19 n.3 (1st Cir. 1995) ("[S]ix circuits have determined that 'aberrant behavior' is not established unless the defendant is a firsttime offender....")....

Id. at *1, n.1 (emphasis added).  Likewise, during the safety valve proffer in this case, Germosen admitted that he was involved in a similar and successful importation scheme with Almonte and his

4

associates two months before the March 2005 trip for which he was charged.

In <u>United States v. Dickerson</u>, 381 F.3d 251 (3rd Cir. 2004), the Third Circuit considered a drug courier's motion for a downward departure based on aberrant behavior. The court held that defendant's importation of over 100 grams of heroin was not "aberrant behavior" under § 5K2.20 because she had "weeks to prepare for the offense, and she engaged in preparatory behavior during that time." <u>Id</u>. at 266. The court found that the first prong of § 5K2.20 (no "significant planning") was not satisfied, noting as follows:

> [Defendant] engaged in a preliminary discussion of the details of her involvement with [a coconspirator] a few weeks prior to her trip; she acquired $900 from [the coconspirator] and used it to purchase her plane ticket; and she arranged to have a friend pick her up from the airport.... [S]he was not simply approached at the airport just before checking her luggage and asked to carry a suitcase onto the plane.

<u>Id</u>. The court also determined that § 5K2.20's second prong (offense was of "limited duration") was not satisfied, stating as follows:

> [W]e think that a period of 'several weeks' exceeds what we would view as a limited duration in theis context. A few weeks is sufficient to give a defendant time to consciously reflect on her actions and consider whether she should engage in the relevant criminal behavior.... Additionally, [defendant] had four days for further reflections once she arrived in the Dominican Republic.

<u>Id</u>. The court therefore vacated the sentence and remanded for re-sentencing. <u>Id</u>. at 267.

### C.   **Post-Booker Consideration of Aberrant Behavior**

On January 12, 2005, however, the Guidelines became "advisory." <u>United States v. Booker</u>, 543 U.S. 220 (2005). As this Court has stated, "[t]he Guidelines are now to be deemed 'advisory,' such that "courts are to 'consider' Guidelines ranges, *see* § 3553(a)(4), but are permitted to tailor sentences in light of other statutory concerns." <u>United States v. Jaber</u>, 362 F.Supp.2d 365 (D. Mass. 2005). Specifically, courts must consider all of the factors in § 3553(a) and impose a sentence that is "sufficient, but not greater than necessary" to comply with the purposes of sentencing set forth in

5

§ 3553(a)(2). See 18 U.S.C. § 3553(a).

The First Circuit has stressed, however, that even in the post-Booker regime, the Guidelines remain "'an important consideration' because they represent[] the only 'integration of the multiple factors' identified in the statute, often reflect[] past practice, and b[ear] the imprimatur of the expert agency charged with developing them." United States v. Smith, 445 F.3d 1, 4 (1st Cir. 2006) (quoting United States v. Jimenez-Beltre, 440 F.3d 514, 518 (1st Cir. 2006)). For these reasons, the court endorsed the following three-step sentencing procedure:

> (1) "[A] district court should normally begin with a guideline calculation,"
>
> (2) "and that after considering departures,"
>
> (3) "the district court should decide whether 'other factors' (beyond the guidelines) warranted an ultimate sentence above or below the guideline range."

Smith, 445 F.3d at 4 (emphasis added); see also Jimenez-Beltre, 440 F.3d at 516.

When making the decision contemplated by Step (3), a "reasonableness" standard applies. As such, although the court may now consider factors that are discouraged or prohibited under the Guidelines (such as aberrant behavior in the instant case), the ultimate sentence must be "reasonable." See Smith, 445 F.3d at 5 ("[t]hat a factor is discouraged or forbidden under the guidelines does not automatically make it irrelevant when a court is weighing the statutory factors apart from the guidelines"); United States v. Cacho-Bonilla, 404 F.3d 84, 94-95 (noting court may consider defendant's aberrant behavior under advisory-guidelines regime). Accordingly, "'the farther the judge's sentence departs from the guidelines sentence ... the more compelling the justification based on factors in section 3553(a) that the judge must offer in order to enable the court of appeals to assess the reasonableness of the sentence imposed.'" Smith, 445 F.3d at 4 (quoting United States v. Dean, 414 F.3d 725, 729 (7th Cir. 2005)).

The body of First Circuit case law concerning aberrant behavior in the advisory-guidelines regime is slim. In United States v. Cacho-Bonilla, 404 F.3d 84 (1st Cir. 2005), the court considered a Booker challenge to the sentences imposed against two defendants, who were convicted of offenses relating to the misuse of program monies funded by the federal government. The defendants argued that the court would have imposed lighter sentences under an advisory-guidelines regime based on aberrant behavior and distinguished records of public service. Id. at 94. The court rejected their challenges, finding that "[a]lthough the commission of multiple acts during or leading up to a single crime may not bar availability of an aberrant behavior departure, *see Grandmaison*, 77 F.3d at 563, the district court correctly concluded that [defendants]'s embezzlement – executed over many years through a variety of methods – was not a single act of aberrant behavior." Id. at 95.

In United States v. Bailey, 377 F.Supp.2d 268 (D.Me. 2005), the court considered a motion for downward departure for aberrant behavior filed by a defendant convicted of possessing child pornography. After discussing the express requirements set forth in § 5K2.20 and the First Circuit's decision in United States v. Rivera-Rodriquez, 318 F.3d 268 (1st Cir. 2003) – both of which are discussed above – the court refused to depart, finding that the defendant did not meet the first criterion set forth in § 5K2.20. Bailey, 377 F.Supp.2d at 271-72; see also U.S.S.G. § 5K2.20 (requiring single occurrence that (1) was committed without significant planning, (2) was of limited duration, and (3) represents marked deviation from otherwise law-abiding life). Instead, "[d]efendant's activities in repeatedly accessing the Internet, using a screen name, joining Internet child pornography clubs, receiving e-mails, downloading child pornography, and deleting the obscene material from his school computer are activities done with significant planning." Bailey, 377 F.Supp.2d at 272.

7

The Eighth Circuit's decision in United States v. Bueno, 443 F.3d 1017 (8th Cir. 2006) is also instructive. In reviewing a downward departure under § 5K2.20, the court noted that before considering the factors in § 3553(a), "a sentencing judge must still determine the proper guidelines range and determine whether a traditional departure is appropriate under the guidelines." Id. at 1022. The court noted that the defendant's offense was "a serious drug trafficking offense," which "required considerable planning on his part and was carried out over a number of days." Id. at 1023. Accordingly, the court held that the defendant was not entitled to a departure for aberrant behavior.

**D.    Germosen is Not Entitled to Downward Departure for Aberrant Behavior**

### 1.    § 5K2.20 Prohibits a Departure in this Case

Germosen is not entitled to a downward departure under § 5K2.20. Probation did not recommend a departure for aberrant behavior in the PSR. Nor did Germosen file an objection relating to § 5K2.20. This is not surprising since such a departure is expressly prohibited by the terms of § 5K2.20. According to Application Note 1, a "serious drug trafficking offense" includes the two drug offenses for which Germosen has been convicted. See id., Applic. n.1 (defining "serious drug trafficking offense" as any drug offense under title 21, U.S. Code, other than simple possession, that carries a mandatory minimum term of imprisonment of five years or greater, regardless of whether defendant meets the "safety-valve" criteria). As discussed above, even in the post-Booker advisory-guidelines regime, the court should determine whether a traditional departure is warranted under the Guidelines before turning to § 3553(a). Here, a departure for aberrant behavior is prohibited.[1]

---

[1] In addition, even if a departure for aberrant behavior were not prohibited under § 5K2.20(c), Germosen does not meet the requirements in § 5K2.20(b). Specifically, the case law discussed above, including Charles v. United States, 2003 WL 21184022 (D. Mass. 2003) and United States v. Dickerson, 381 F.3d 251 (3rd Cir. 2004), supports a finding that Germosen did not act without "significant planning" or within a "limited duration" as required by § 5K2.20(b).

### 2.     Defendant is Not Entitled to a Deviation under § 3553(a) based on Aberrant Behavior

Nor is a deviation based on aberrant behavior appropriate under § 3553(a). First, the fact that a departure for aberrant behavior is prohibited under the Guidelines bears on the reasonableness of relying on aberrant behavior under § 3553(a). See Smith, 445 F.3d at 5 (noting "reliance on a discounted or excluded factor may, like the extent of the variance, have some bearing on reasonableness"). Second, although the issue of aberrant behavior may fall within the scope of "the history and characteristics of the defendant" within the meaning of § 3553(a)(1), that provision also requires the Court to consider "the nature and circumstances of the offense." 18 U.S.C. § 3553(a)(1). Here, the following facts relate to "the nature and circumstances of [Germosen's] offense" --

- Germosen took two trips – one in January 2005 and another in March 2005;

- He traveled internationally, swallowed heroin, and smuggled it through U.S. customs;

- He took numerous steps to complete the January 2005 crime, including: (1) buying the ticket, (2) arranging for a ride to Logan, (3) sitting down and swallowing 10 pellets of heroin, (4) traveling from Logan to the Dominican Republic to New York to Boston, and (5) passing the pellets and giving them to Almonte in exchange for money.

- He also took numerous steps to complete the March 2005 crime, including: (1) meeting with Almonte's associates to obtain his airline ticket, (2) arranging for a ride to Logan, (3) meeting with coconspirators in the Dominican Republic, (4) sitting down and swallowing 24 pellets of heroin, and (5) traveling from the Dominican Republic to Logan.

- Germosen had time for reflection between these two trips, and throughout the travel time during each trip.

- The reason Germosen took these actions was to make some "easy cash."

- Heroin is one of the most addictive and destructive drugs that plagues our nation.

In light of these factors, a deviation under § 3553(a)(1) is not appropriate.

In addition, the goals of sentencing set forth in § 3553(a)(2) simply do not support a 37-month downward departure, as suggested by the defendant. See Smith, 445 F.3d at 5 (finding 46-month sentence for defendant with advisory GSR of 100-125 was "unreasonably low"); United States v. Gall, 446 F.3d 884 (8th Cir. 2006) (reversing 36-month probationary sentence where low-end of advisory GSR was 30 months in prison, finding "this extraordinary variance is not supported by extraordinary justifications"); United States v. Lazenby, 439 F.3d 928, 933 (8th Cir. 2006) (finding 12-month prison sentence from GSR of 70-87 months "unreasonable" because sentence did not reflect seriousness of and provide just punishment for defendant's drug offense). Instead, a sentence at the low-end of the GSR would serve the purposes of reflecting the seriousness of the offense, promoting respect for the law, providing just punishment for the offense, and affording adequate deterrence to such criminal conduct.

For all of the foregoing reasons, the government respectfully objects to a deviation from the GSR based on aberrant behavior.

Dated: June 21, 2006                    Respectfully submitted,

                                        MICHAEL J. SULLIVAN
                                        United States Attorney

                                    By:    /s/ Lisa M. Asiaf
                                        LISA M. ASIAF
                                        Assistant U.S. Attorney
                                        Tel: (617) 748-3268

**CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and a hard copy will also be sent to defendant's counsel by facsimile on June 21, 2006.

                                          /s/ Lisa M. Asiaf
                                        Lisa M. Asiaf