✎AO 245B(05-MA)     (Rev. 06/05) Judgment in a Criminal Case
Sheet 1 - D. Massachusetts - 10/05

# UNITED STATES DISTRICT COURT
## District of Massachusetts

UNITED STATES OF AMERICA
### V.
### Yohan A. Germonsen

**JUDGMENT IN A CRIMINAL CASE**

Case Number: **1: 05 CR 10120 - NG - 01**

USM Number: 25549-038

John H. Molloy

Defendant's Attorney

☑ Additional documents attached

Transcript Excerpt of Sentencing Hearing

☐

## THE DEFENDANT:

☑ pleaded guilty to count(s)    1 & 2

☐ pleaded nolo contendere to count(s)
which was accepted by the court.

☐ was found guilty on count(s)
after a plea of not guilty.

The defendant is adjudicated guilty of these offenses:

Additional Counts - See continuation page ☐

| Title & Section | Nature of Offense | Offense Ended | Count |
|---|---|---|---|
| 21USC§963 | Conspiracy to Unlawfully Import Heroin Into the U.S. | 03/10/05 | 1 |
| 21USC§952(a),960 (b)(2)(A) | Unlawful Importation of Heroin Into the U.S. | 03/10/06 | 2 |

The defendant is sentenced as provided in pages 2 through ___9___ of this judgment. The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

☐ The defendant has been found not guilty on count(s)

☐ Count(s) _____ ☐ is ☐ are dismissed on the motion of the United States.

It is ordered that the defendant must notify the United States attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid. If ordered to pay restitution, the defendant must notify the court and United States attorney of material changes in economic circumstances.

06/30/06

Date of Imposition of Judgment

/s/Nancy Gertner

Signature of Judge

The Honorable Nancy Gertner
Judge, U.S. District Court

Name and Title of Judge

1/19/07

Date

| | | | | Judgment—Page | 2 | of | 9 |

DEFENDANT:  **Yohan A. Germonsen**
CASE NUMBER:  **1: 05 CR 10120  - NG - 01**

## PROBATION

☑ **See continuation page**

The defendant is hereby sentenced to probation for a term of :   **2**   year(s)

on counts 1 & 2, all to be served concurrently with each other.

The defendant shall not commit another federal, state or local crime.

The defendant shall not unlawfully possess a controlled substance. The defendant shall refrain from any unlawful use of a controlled substance. The defendant shall submit to one drug test within 15 days of placement on probation and at least two periodic drug tests thereafter, not to exceed 104 tests per year, as directed by the probation officer.

☑ The above drug testing condition is suspended, based on the court's determination that the defendant poses a low risk of future substance abuse. (Check, if applicable.)

☑ The defendant shall not possess a firearm, ammunition, destructive device, or any other dangerous weapon. (Check, if applicable.)

☐ The defendant shall cooperate in the collection of DNA as directed by the probation officer. (Check, if applicable.)

☐ The defendant shall register with the state sex offender registration agency in the state where the defendant resides, works, or is a student, as directed by the probation officer. (Check, if applicable.)

☐ The defendant shall participate in an approved program for domestic violence. (Check, if applicable.)

If this judgment imposes a fine or restitution, it is a condition of probation that the defendant pay in accordance with the Schedule of Payments sheet of this judgment.

The defendant must comply with the standard conditions that have been adopted by this court as well as with any additional conditions on the attached page.

## STANDARD CONDITIONS OF SUPERVISION

1) the defendant shall not leave the judicial district without the permission of the court or probation officer;

2) the defendant shall report to the probation officer and shall submit a truthful and complete written report within the first five days of each month;

3) the defendant shall answer truthfully all inquiries by the probation officer and follow the instructions of the probation officer;

4) the defendant shall support his or her dependents and meet other family responsibilities;

5) the defendant shall work regularly at a lawful occupation, unless excused by the probation officer for schooling, training, or other acceptable reasons;

6) the defendant shall notify the probation officer at least ten days prior to any change in residence or employment;

7) the defendant shall refrain from excessive use of alcohol and shall not purchase, possess, use, distribute, or administer any controlled substance or any paraphernalia related to any controlled substances, except as prescribed by a physician;

8) the defendant shall not frequent places where controlled substances are illegally sold, used, distributed, or administered;

9) the defendant shall not associate with any persons engaged in criminal activity and shall not associate with any person convicted of a felony, unless granted permission to do so by the probation officer;

10) the defendant shall permit a probation officer to visit him or her at any time at home or elsewhere and shall permit confiscation of any contraband observed in plain view of the probation officer;

11) the defendant shall notify the probation officer within seventy-two hours of being arrested or questioned by a law enforcement officer;

12) the defendant shall not enter into any agreement to act as an informer or a special agent of a law enforcement agency without the permission of the court; and

13) as directed by the probation officer, the defendant shall notify third parties of risks that may be occasioned by the defendant's criminal record or personal history or characteristics and shall permit the probation officer to make such notifications and to confirm the defendant's compliance with such notification requirement.

AO 245B(05-MA)   Case 1:05-cr-10120-NG   Document 36   Filed 01/19/2007   Page 3 of 9
(Rev. 06/05) Judgment in a Criminal Case
Sheet 4A - Continuation Page - Supervised Release/Probation -10/05

DEFENDANT: **Yohan A. Germonsen**

CASE NUMBER: **1: 05 CR 10120 - NG - 01**

Judgment—Page   3   of   9

## ADDITIONAL ☐ SUPERVISED RELEASE ☑ PROBATION TERMS

The defendant is prohibited from possessing a firearm or other dangerous weapon.

Home detention without electronic monitoring for 6 months.

## Continuation of Conditions of ☐ Supervised Release ☐ Probation

✎AO 245B(05-MA)    (Rev. 06/05) Judgment in a Criminal Case
Sheet 5 - D. Massachusetts - 10/05

| | |
|---|---|
| DEFENDANT: **Yohan A. Germonsen** | Judgment — Page ___4___ of ___9___ |
| CASE NUMBER: **1: 05  CR  10120  -  NG  -  01** | |

## CRIMINAL MONETARY PENALTIES

The defendant must pay the total criminal monetary penalties under the schedule of payments on Sheet 6.

| | **Assessment** | **Fine** | **Restitution** |
|---|---|---|---|
| **TOTALS** | $      $200.00 | $ | $ |

☐ The determination of restitution is deferred until _____. An *Amended Judgment in a Criminal Case* (AO 245C) will be entered after such determination.

☐ The defendant must make restitution (including community restitution) to the following payees in the amount listed below.

If the defendant makes a partial payment, each payee shall receive an approximately proportioned payment, unless specified otherwise in the priority order or percentage payment column below. However, pursuant to 18 U.S.C. § 3664(i), all nonfederal victims must be paid before the United States is paid.

| **Name of Payee** | **Total Loss\*** | **Restitution Ordered** | **Priority or Percentage** |
|---|---|---|---|
| | | | |

☐ See Continuation
Page

| **TOTALS** | $ _____ $0.00 | $ _____ $0.00 | |

☐ Restitution amount ordered pursuant to plea agreement  $ _____

☐ The defendant must pay interest on restitution and a fine of more than $2,500, unless the restitution or fine is paid in full before the fifteenth day after the date of the judgment, pursuant to 18 U.S.C. § 3612(f). All of the payment options on Sheet 6 may be subject to penalties for delinquency and default, pursuant to 18 U.S.C. § 3612(g).

☐ The court determined that the defendant does not have the ability to pay interest and it is ordered that:

☐ the interest requirement is waived for the    ☐ fine    ☐ restitution.

☐ the interest requirement for the    ☐ fine    ☐ restitution is modified as follows:

\* Findings for the total amount of losses are required under Chapters 109A, 110, 110A, and 113A of Title 18 for offenses committed on or after September 13, 1994, but before April 23, 1996.

DEFENDANT:  **Yohan A. Germonsen**

CASE NUMBER: **1:  05  CR  10120  - NG  - 01**

Judgment — Page   5   of   9

# SCHEDULE OF PAYMENTS

Having assessed the defendant's ability to pay, payment of the total criminal monetary penalties are due as follows:

**A** ☐ Lump sum payment of $ _____ due immediately, balance due

       ☐ not later than _____ , or
       ☐ in accordance  ☐  C,  ☐  D,  ☐ E, or  ☐ F below; or

**B** ☒ Payment to begin immediately (may be combined with  ☐  C,  ☐  D, or  ☐ F below); or

**C** ☐ Payment in equal _____ (e.g., weekly, monthly, quarterly) installments of  $ _____ over a period of
    _____ (e.g., months or years), to commence _____ (e.g., 30 or 60 days) after the date of this judgment; or

**D** ☐ Payment in equal _____ (e.g., weekly, monthly, quarterly) installments of  $ _____ over a period of
    _____ (e.g., months or years), to commence _____ (e.g., 30 or 60 days) after release from imprisonment to a
    term of supervision; or

**E** ☐ Payment during the term of supervised release will commence within _____ (e.g., 30 or 60 days) after release from
    imprisonment.  The court will set the payment plan based on an assessment of the defendant's ability to pay at that time; or

**F** ☐ Special instructions regarding the payment of criminal monetary penalties:

Unless the court has expressly ordered otherwise, if this judgment imposes imprisonment, payment of criminal monetary penalties is due during imprisonment.  All criminal monetary penalties, except those payments made through the Federal Bureau of Prisons' Inmate Financial Responsibility Program, are made to the clerk of the court.

The defendant shall receive credit for all payments previously made toward any criminal monetary penalties imposed.

☐ Joint and Several

☐ See Continuation Page

    Defendant and Co-Defendant Names and Case Numbers (including defendant number), Total Amount, Joint and Several Amount, and corresponding payee, if appropriate.

☐ The defendant shall pay the cost of prosecution.

☐ The defendant shall pay the following court cost(s):

☐ The defendant shall forfeit the defendant's interest in the following property to the United States:

Payments shall be applied in the following order: (1) assessment, (2) restitution principal, (3) restitution interest, (4) fine principal, (5) fine interest, (6) community restitution, (7) penalties, and (8) costs, including cost of prosecution and court costs.

AO 245B    (Rev. 06/05) Criminal Judgment
Attachment (Page 1) — Statement of Reasons - D. Massachusetts - 10/05

DEFENDANT:      **Yohan A. Germonsen**
CASE NUMBER:    **1: 05  CR  10120   - NG - 01**
DISTRICT:            **MASSACHUSETTS**

Judgment — Page    6    of    9

# STATEMENT OF REASONS

## I    COURT FINDINGS ON PRESENTENCE INVESTIGATION REPORT

A    ☑    **The court adopts the presentence investigation report without change.**

B    ☐    **The court adopts the presentence investigation report with the following changes.**
         (Check all that apply and specify court determination, findings, or comments, referencing paragraph numbers in the presentence report, if applicable.)
         (Use page 4 if necessary.)

1    ☐    **Chapter Two of the U.S.S.G. Manual** determinations by court (including changes to base offense level, or
         specific offense characteristics):

2    ☐    **Chapter Three of the U.S.S.G. Manual** determinations by court (including changes to victim-related adjustments,
         role in the offense, obstruction of justice, multiple counts, or acceptance of responsibility):

3    ☐    **Chapter Four of the U.S.S.G. Manual** determinations by court (including changes to criminal history category or
         scores, career offender, or criminal livelihood determinations):

4    ☐    **Additional Comments or Findings** (including comments or factual findings concerning certain information in the
         presentence report that the Federal Bureau of Prisons may rely on when it makes inmate classification, designation,
         or programming decisions):

C    ☐    **The record establishes no need for a presentence investigation report pursuant to Fed.R.Crim.P. 32.**

## II    COURT FINDING ON MANDATORY MINIMUM SENTENCE (Check all that apply.)

A    ☐    No count of conviction carries a mandatory minimum sentence.

B    ☐    Mandatory minimum sentence imposed.

C    ☑    One or more counts of conviction alleged in the indictment carry a mandatory minimum term of imprisonment, but the
         sentence imposed is below a mandatory minimum term because the court has determined that the mandatory minimum
         does not apply based on

         ☐    findings of fact in this case
         ☐    substantial assistance (18 U.S.C. § 3553(e))
         ☑    the statutory safety valve (18 U.S.C. § 3553(f))

## III    COURT DETERMINATION OF ADVISORY GUIDELINE RANGE (BEFORE DEPARTURES):

Total Offense Level:         21
Criminal History Category:    I
Imprisonment Range:      37    to    46    months
Supervised Release Range:    3    to    5    years
Fine Range: $  10.000    to  $  4.000.000
☑   Fine waived or below the guideline range because of inability to pay.

DEFENDANT:   **Yohan A. Germonsen**
CASE NUMBER: **1: 05 CR 10120 - NG - 01**
DISTRICT:      **MASSACHUSETTS**

# STATEMENT OF REASONS

**IV   ADVISORY GUIDELINE SENTENCING DETERMINATION** (Check only one.)

A ☐   The sentence is within an advisory guideline range that is not greater than 24 months, and the court finds no reason to depart.

B ☐   The sentence is within an advisory guideline range that is greater than 24 months, and the specific sentence is imposed for these reasons.
         (Use Section VIII if necessary.)

C ☑   The court departs from the advisory guideline range for reasons authorized by the sentencing guidelines manual.
         (Also complete Section V.)

D ☐   The court imposed a sentence outside the advisory sentencing guideline system.  (Also complete Section VI.)

**V   DEPARTURES AUTHORIZED BY THE ADVISORY SENTENCING GUIDELINES** (If applicable.)

A  **The sentence imposed departs** (Check only one.):
    ☑  below the advisory guideline range
    ☐  above the advisory guideline range

B  **Departure based on** (Check all that apply.):

    1      **Plea Agreement** (Check all that apply and check reason(s) below.):
           ☐  5K1.1 plea agreement based on the defendant's substantial assistance
           ☐  5K3.1 plea agreement based on Early Disposition or "Fast-track" Program
           ☐  binding plea agreement for departure accepted by the court
           ☐  plea agreement for departure, which the court finds to be reasonable
           ☐  plea agreement that states that the government will not oppose a defense departure motion.

    2      **Motion Not Addressed in a Plea Agreement** (Check all that apply and check reason(s) below.):
           ☐  5K1.1 government motion based on the defendant's substantial assistance
           ☐  5K3.1 government motion based on Early Disposition or "Fast-track" program
           ☐  government motion for departure
           ☐  defense motion for departure to which the government did not object
           ☑  defense motion for departure to which the government objected

    3      **Other**
           ☐  Other than a plea agreement or motion by the parties for departure (Check reason(s) below.):

C  **Reason(s) for Departure** (Check all that apply other than 5K1.1 or 5K3.1.)

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| ☐ | 4A1.3 | Criminal History Inadequacy | ☐ | 5K2.1 | Death | ☐ | 5K2.11 Lesser Harm |
| ☐ | 5H1.1 | Age | ☐ | 5K2.2 | Physical Injury | ☐ | 5K2.12 Coercion and Duress |
| ☐ | 5H1.2 | Education and Vocational Skills | ☐ | 5K2.3 | Extreme Psychological Injury | ☐ | 5K2.13 Diminished Capacity |
| ☐ | 5H1.3 | Mental and Emotional Condition | ☐ | 5K2.4 | Abduction or Unlawful Restraint | ☐ | 5K2.14 Public Welfare |
| ☐ | 5H1.4 | Physical Condition | ☐ | 5K2.5 | Property Damage or Loss | ☐ | 5K2.16 Voluntary Disclosure of Offense |
| ☐ | 5H1.5 | Employment Record | ☐ | 5K2.6 | Weapon or Dangerous Weapon | ☐ | 5K2.17 High-Capacity, Semiautomatic Weapon |
| ☐ | 5H1.6 | Family Ties and Responsibilities | ☐ | 5K2.7 | Disruption of Government Function | ☐ | 5K2.18 Violent Street Gang |
| ☐ | 5H1.11 | Military Record, Charitable Service, Good Works | ☐ | 5K2.8 | Extreme Conduct | ☐ | 5K2.20 Aberrant Behavior |
| | | | ☐ | 5K2.9 | Criminal Purpose | ☐ | 5K2.21 Dismissed and Uncharged Conduct |
| ☑ | 5K2.0 | Aggravating or Mitigating Circumstances | ☐ | 5K2.10 | Victim's Conduct | ☐ | 5K2.22 Age or Health of Sex Offenders |
| | | | | | | ☐ | 5K2.23 Discharged Terms of Imprisonment |
| | | | | | | ☐ | Other guideline basis (e.g., 2B1.1 commentary) |

D   **Explain the facts justifying the departure.**  (Use Section VIII if necessary.)

       See Sentencing  Memorandum for details.

| | |
|---|---|
| DEFENDANT: **Yohan A. Germonsen** | Judgment — Page  8  of  9 |
| CASE NUMBER: **1: 05  CR  10120  - NG - 01** | |
| DISTRICT:          **MASSACHUSETTS** | |

# STATEMENT OF REASONS

**VI   COURT DETERMINATION FOR SENTENCE OUTSIDE THE ADVISORY GUIDELINE SYSTEM**
(Check all that apply.)

A    **The sentence imposed is** (Check only one.):
☐ below the advisory guideline range
☐ above the advisory guideline range

B    **Sentence imposed pursuant to** (Check all that apply.):

1    **Plea Agreement** (Check all that apply and check reason(s) below.):
☐  binding plea agreement for a sentence outside the advisory guideline system accepted by the court
☐  plea agreement for a sentence outside the advisory guideline system, which the court finds to be reasonable
☐  plea agreement that states that the government will not oppose a defense motion to the court to sentence outside the advisory guideline system

2    **Motion Not Addressed in a Plea Agreement** (Check all that apply and check reason(s) below.):
☐  government motion for a sentence outside of the advisory guideline system
☐  defense motion for a sentence outside of the advisory guideline system to which the government did not object
☐  defense motion for a sentence outside of the advisory guideline system to which the government objected

3    **Other**
☐  Other than a plea agreement or motion by the parties for a sentence outside of the advisory guideline system (Check reason(s) below.):

C    **Reason(s) for Sentence Outside the Advisory Guideline System** (Check all that apply.)

☐  the nature and circumstances of the offense and the history and characteristics of the defendant pursuant to 18 U.S.C. § 3553(a)(1)
☐  to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense (18 U.S.C. § 3553(a)(2)(A))
☐  to afford adequate deterrence to criminal conduct (18 U.S.C. § 3553(a)(2)(B))
☐  to protect the public from further crimes of the defendant (18 U.S.C. § 3553(a)(2)(C))
☐  to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner (18 U.S.C. § 3553(a)(2)(D))
☐  to avoid unwarranted sentencing disparities among defendants (18 U.S.C. § 3553(a)(6))
☐  to provide restitution to any victims of the offense (18 U.S.C. § 3553(a)(7))

D    **Explain the facts justifying a sentence outside the advisory guideline system.**  (UseSection VIII if necessary.)

| | |
|---|---|
| DEFENDANT: | **Yohan A. Germonsen** |
| CASE NUMBER: | **1: 05  CR  10120  - NG  - 01** |
| DISTRICT: | **MASSACHUSETTS** |

Judgment — Page   9   of   9

# STATEMENT OF REASONS

## VII   COURT DETERMINATIONS OF RESTITUTION

A   ☑   Restitution Not Applicable.

B   Total Amount of Restitution:   _____

C   Restitution not ordered (Check only one.):

1   ☐   For offenses for which restitution is otherwise mandatory under 18 U.S.C. § 3663A, restitution is not ordered because the number of identifiable victims is so large as to make restitution impracticable under 18 U.S.C. § 3663A(c)(3)(A).

2   ☐   For offenses for which restitution is otherwise mandatory under 18 U.S.C. § 3663A, restitution is not ordered because determining complex issues of fact and relating them to the cause or amount of the victims' losses would complicate or prolong the sentencing process to a degree that the need to provide restitution to any victim would be outweighed by the burden on the sentencing process under 18 U.S.C. § 3663A(c)(3)(B).

3   ☐   For other offenses for which restitution is authorized under 18 U.S.C. § 3663 and/or required by the sentencing guidelines, restitution is not ordered because the complication and prolongation of the sentencing process resulting from the fashioning of a restitution order outweigh the need to provide restitution to any victims under 18 U.S.C. § 3663(a)(1)(B)(ii).

4   ☐   Restitution is not ordered for other reasons.  (Explain.)

D   ☐   Partial restitution is ordered for these reasons (18 U.S.C. § 3553(c)):

## VIII   ADDITIONAL FACTS JUSTIFYING THE SENTENCE IN THIS CASE (If applicable.)

See Sentencing Memorandum for details.

Sections I, II, III, IV, and VII of the Statement of Reasons form must be completed in all felony cases.

| | |
|---|---|
| Defendant's Soc. Sec. No.: | 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 |
| Defendant's Date of Birth: | 1977 |
| Defendant's Residence Address: | 114 Essex Street Apt #2<br>Lynn, MA  01902 |
| Defendant's Mailing Address: | same as above |

Date of Imposition of Judgment
06/30/06

/s/Nancy Gertner
Signature of Judge
The Honorable Nancy Gertner      Judge, U.S. District Court
Name and Title of Judge
Date Signed  1/19/07

SUSVSY~2.txt

1

1                    UNITED STATES DISTRICT COURT

2               FOR THE DISTRICT OF MASSACHUSETTS

3

4

5     UNITED STATES        )    CR. NO. 05-10120-NG-1

6     VS.                  )    COURTROOM NO. 2

7     YOHAN A. GERMOSEN    )    1 COURTHOUSE WAY

8                               BOSTON, MA  02210

9

10                     FINDINGS OF FACT

11

12                        SENTENCING

13

14                       JUNE 30, 2006

15                        9:58 A.M.

16

17

18

19

20          BEFORE THE HONORABLE NANCY GERTNER

21          UNITED STATES DISTRICT COURT JUDGE

22

23

24                    VALERIE A. O'HARA

25                  OFFICIAL COURT REPORTER

SUSVSY~2.txt

.

2

```
 1    A P P E A R A N C E S:

 2         United States Attorney's Office, by LISA M. ASIAF,
      ASSISTANT UNITED STATES ATTORNEY, One Courthouse Way,
 3    Suite 9200, Boston, Massachusetts  02210, for the United
      States;
 4
           Law Offices of John H. Molloy, by JOHN H. MOLLOY, ESQ.,
 5    385 Broadway, Suite 402, Revere, Massachusetts  01887, for
      the Defendant.
 6

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

SUSVSY~2.txt

3

```
 1                    FINDINGS OF FACT
 2          THE COURT:   Thank you.  I don't know where to
 3   begin.  Even after the changes in the sentencing law, I'm
 4   supposed to start with the Sentencing Guidelines, but let me
 5   start where I think we really ought to start with, the
 6   statute, and the statute says I'm to impose a sentence
 7   sufficient but not greater than necessary to comply with the
 8   purposes of sentencing.
 9          The statute tells me that I'm to look at the
10   nature and circumstances of the offense and the history and
11   characteristic of the defendant to reflect the seriousness
12   of the crime, provide deterrence, protect the public,
13   provide vocational training and apply the guidelines, and
14   the guideline portion of that is now advisory.
15          Your sentencing approach is driven by the kind of
16   drug and the quantity of drug.  The guidelines don't make a
17   distinction between someone who is so clearly at the bottom
18   of the food chain of drug dealing that they put drugs in
19   their own body.  It simply says quantity, and if you're
20   carrying this quantity as a mule, you're treated the same
21   under the guidelines as you're carrying the quantity in a
22   briefcase dressed up, and that's ridiculous, the guideline
23   is driven by the quantity of drugs involved and the nature
24   of the drug.
25          To your credit, and that would have been a
```

Page 3

SUSVSY~2.txt

4

1    mandatory minimum, to your credit, you are eligible for a
2    lower sentence because you are a first offender, you can
3    escape the mandatory minimum which otherwise would be five
4    years, and you're down to a guideline level of 21.  You not
5    only have no criminal record, not just no criminal history
6    score, you have absolutely no record, and, again, the
7    guidelines don't make a distinction for that.  You're
8    criminal history 1 if you have multiple arrests that led to
9    no conviction, you're criminal history 1 if you had multiple
10    arrests and convictions for which you didn't get time; you
11    have no record.  The guidelines don't account for that.
12        Your lawyer has moved for a downward departure
13    initially, and you tried to cooperate with the government.
14    You were wired, you did what you could, but to some degree,
15    it's a testament to where you were, forgive me for
16    describing it, on the food chain that you can't, nothing
17    came of it.
18        The government makes the decisions about
19    substantial assistance, and had they made the decision to
20    give you a substantial assistance departure, probation would
21    have been clear.  The government in this jurisdiction makes
22    different decisions about cooperation than jurisdictions
23    elsewhere in the country.  In fact, I believe the statistics
24    show that this office has the lowest 5K rate or among the
25    lowest in the country so that because of the decision that

SUSVSY~2.txt

5

1    the prosecutor makes, you're suddenly in a different
2    category, and the decision that the prosecutor makes as to
3    which I cannot secondguess, your lawyers moved for a
4    downward departure on this ground, and it's clear that this
5    is not a ground that I cannot consider.
6         But I asked you the last time, I asked the lawyers
7    the last time to tell me whether or not you fit within the
8    category of the guidelines because you have to start with
9    the guidelines of aberrant conduct, aberrant behavior, and
10   the aberrant conduct guideline says that the defendant has a
11   past single criminal occurrence that was committed without
12   significant planning, without significant planning.
13        I don't think that getting a ticket and swallowing
14   heroin is significant planning.  I think this was clearly
15   intended to address situations where someone, you know, had
16   to spend some time at it.  It was of limited duration, there
17   were two trips, right, one in January, one in March --
18        PROBATION OFFICER:  Correct, your Honor.
19        THE COURT:   -- represents a marked deviation by
20   the defendant from an otherwise law-abiding life.  This is a
21   marked deviation by the defendant from an otherwise
22   law-abiding life.  I'll get into that in a minute.  I'm not
23   allowed to give the aberrant conduct departure if the
24   offense involves serious injury or death, it didn't,
25   discharged a firearm, the offense of conviction is a serious

SUSVSY~2.txt

6

1   drug trafficking offense, and the sentencing commission in
2   its wisdom counts again carrying drugs of a certain quantity
3   without regard to the way the person is carrying it, without
4   regard to the nature of the crime.
5           So the question then is do I give this guideline
6   deference, and let me spend a minute.  I'm going to write a
7   decision about this.  This is a guideline that presumably
8   was implementing the Sentencing Commission had been told by
9   Congress that they ought to give, "The commission shall
10  ensure that the guidelines reflect --" I'm reading from 994,
11  994(j), "The commission shall ensure that the guidelines
12  reflect the general appropriateness of imposing a sentence
13  other than imprisonment in cases in which the defendant is a
14  first offender who has not been convicted of a crime of
15  violence or otherwise serious offense and the general
16  appropriateness of imposing a term of imprisonment on
17  someone convicted of a crime of violence that results in
18  serious bodily injury.
19          The commission was told by Congress that it was
20  okay to sentence people to probation who are first offenders
21  as long as it's not a crime of violence or an otherwise
22  serious offense, and the commission defined even this kind
23  of transaction, being a mule, the bottom of the line, as a
24  serious drug trafficking offense.  The commission did it,
25  and Congress did not.  How did the commission do it?  The

SUSVSY~2.txt

7

1    aberrant conduct departure was in the introduction to the
2    guidelines when they were first promulgated, the
3    introduction, it was not a guideline, and every judge across
4    the country thought it was a good thing, and this was a
5    judicially-created departure to deal exactly with people
6    like Mr. Germosen, to deal exactly with people who made one
7    mistake, to deal exactly with people who everything about
8    their life cries out for consideration.
9          Again, this was not in the formal guidelines, this
10   was in the introduction, and judges across the country took
11   the word in the introduction and said we're going to carve
12   out a departure ground for basically people who were more
13   than just criminal history 1, these were first offenders,
14   real first offenders.  The First Circuit had the most
15   lenient approach.  Other courts around the country had a
16   more restrictive approach.  The sentencing commission
17   decided they had to issue a guideline on it, and this is the
18   part that I find particularly significant, the sentencing
19   commission issues a guideline, and I'm supposed to say they
20   took into account the purposes of sentencing.
21         Well, we have the guideline, the legislative
22   history of the aberrant conduct guideline, and they took
23   into account the purposes of sentencing, and that's why I'm
24   supposed to follow it.  Here's how they took into account
25   the purposes of sentencing, the reason for the amendment, on

SUSVSY~2.txt

8

1    the one hand, there's a circuit conflict, and that's the
2    reason for the amendment.
3          The commission has concluded that the application
4    of the current language is overly restrictive and may
5    preclude departures for aberrant behavior in circumstances
6    in which such a departure may be warranted.  You can look in
7    vain in the legislative history of the aberrant conduct
8    departure for any reference to the purposes of sentencing
9    for any notion why you would want to give a break to someone
10   who did everything he could to cooperate with the
11   government, everything he could, everything he could in his
12   life to be law-abiding.
13         You search in vain in this guideline legislative
14   history, for want of a better word, for any sense of what to
15   do with someone who I am confident will never appear before
16   me again, will never get in trouble again.  You search in
17   vain in this legislative history for any discussion of how
18   this guideline relates to the purposes of sentencing, and so
19   the notion that I ought to defer to it as written in this
20   case, not in general, but in this case makes no sense.
21         The sentencing commission defined what a serious
22   offense was.  This is a serious offense in the sense that,
23   as the government notes, heroin distribution is the worst,
24   is a serious offense, but there's a difference between
25   heroin distribution when you're getting a cut of the profits

SUSVSY~2.txt

9

1    and heroin distribution when you put a pellet in your body,

2    and if the sentencing commission did not make that

3    distinction in its guidelines, we should.

4           So I am going to depart based on aberrant conduct,

5    and I'm going to conclude that whatever the limitations are

6    in the manual don't apply to this case.  Mr. Germosen and

7    his family are fine, upstanding people, lawfully in this

8    country.

9           Mr. Germosen's mother obtained a visa for her son

10   and for her family from the Dominican Republic, moved to a

11   small apartment in Charlestown, one of only two Hispanic

12   families in Charlestown, and the day they moved in he was

13   warned as to where he and his siblings could walk and play,

14   they were subject to racism, called Spic, spat at, he didn't

15   speak English very well, he now speaks English perfectly.

16          He explained he routinely got into fights.  To

17   help the racial tension in the school, he participated in

18   Words, Not Weapons, a program which tried to help people

19   understand other cultures.  It didn't help.  Someone knocked

20   on the door to their apartment in 1994, he was hit in the

21   face so hard he lost consciousness, the stress became so

22   unbearable that he threatened to commit suicide.

23          Nevertheless he began attending night school to

24   graduate on time and then became involved with

25   Sociedad-Latina, whose mission is to by delivering programs

Page 9

SUSVSY~2.txt

1   that encourage leadership, and that's what he was involved
2   in.  He has a record of being responsible for his family.
3   He has a record of being responsible for his work.  He has a
4   record of living with his mother whenever the life got hard
5   for him.
6           He has a record of going to school, enrolled part
7   time in Bunker Hill Community College where he was a liberal
8   arts major, a member of the Hispanic Club, he didn't
9   graduate, he was enrolled in classes during the 1997 spring
10  semester but withdrew, then he attended the Lee Institute in
11  Saugus to get a real estate license, he took the real exam.
12  I understand he passed, is that right?  He passed.  The
13  instant offense occurred -- well, the defendant reports that
14  he jointly owned Central Communications with his mother.
15  She purchased the business on June 15th, 2004.  They work in
16  the business together; is that right?
17          I mean, this is a life that is worth crediting and
18  worth saying that this is aberrant conduct.  It is ironic,
19  of course, that all the controversy about aberrant conduct
20  departures came about in white collar cases, came about
21  because judges were bending over backwards to give the
22  benefit to well-healed businessmen in the community, and
23  Congress was rightly concerned that that's a problem.
24  That's not this case.  This is giving the benefit to someone
25  who has struggled and worked hard and made a mistake.

SUSVSY~2.txt

11

1          So, I am going to depart from 37 to 46 months.
2     I'm going to depart to Zone B, Offense Level 10, Criminal
3     History 1, a range in which I can impose probation, and I
4     will impose probation.
5          Mr. Germosen, I've been at this for some time, and
6     I'm confident I won't see you again.  You can stand, please.
7     I understand I also have to accept your plea which I didn't
8     do.  The sentence of probation I'm going to give it seems to
9     me is precisely the sentence that reflects the policies of
10    the Sentencing Reform Act, the policies that the commission
11    imperfectly carried out.
12         This is a sentence that promotes respect for the
13    law.  You have a felony conviction on your record.  It will
14    affect every application you make, every loan you apply for,
15    every school you go to.  Maybe a felony application, a
16    felony conviction doesn't make any difference for someone
17    who doesn't have a life, right, but you have a life.  This
18    is going to make a difference.  I refuse to believe that
19    this is not punishment enough.
20         This allows you to go on with your life.  It gives
21    you a sense that what you have done has been valued and no
22    prison is necessary in this case.  I'm going to sentence you
23    to two years probation, six months of which in home
24    detention, home detention means that you are to submit
25    essentially a schedule to probation.  You will be able to

SUSVSY~2.txt

12

1   leave your home for religion reasons, work reasons, medical
2   reasons, childcare reasons, you come up with a schedule with
3   probation as to when you can be home and when you have to be
4   at work.
5           So it's two years probation, six months of which
6   is to be served in home detention.  While you're on
7   probation, there's no fine and no restitution, no fine
8   because of your inability to pay, no restitution.  While
9   you're on probation and the rest of your life, you're not to
10  commit another federal, state or local crime or illegally
11  possess a controlled substance.
12          You shall comply with the standard conditions and
13  in addition the special conditions, you're prohibited from
14  possessing a firearm or other dangerous weapon.  You are to
15  attend a public-private nonprofit offender rehabilitation
16  program.
17          I have a better idea.  We're going to make this a
18  condition of your probation that you do community service,
19  the community service will be speaking to kids, any program
20  that would enable you to talk to kids in your community
21  about just how crazy and risky and stupid this behavior is,
22  so we'll make that as a condition of your probation.
23                          - - - -
24
25

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| v. | )      Criminal No. 05cr10120-NG |
| | ) |
| YOHAN A. GERMOSEN, | ) |
|     Defendant. | ) |

GERTNER, D.J.

SENTENCING MEMORANDUM
January 18, 2007

Yohan A. Germosen ("Germosen") was 26 years old when he was arrested at Logan Airport.  He had no criminal record -- as a juvenile or as an adult.  He came from a close-knit family, graduated from high school, and was consistently employed throughout his adolescence and his young adult life.  Despite all obstacles, he was a credit to the communities in which he lived, and especially to the Charlestown community.  At Charlestown High School, Germosen was the target of racial attacks.  Instead of continuing the cycle of retribution and violence, Germosen worked to heal racial tensions between Latinos and White students through a program called "Words, Not Weapons."  He continued those efforts after graduation.

The events of 2005 stood in stark contrast to Germosen's prior history.  On March 10, 2005, he was arrested at Logan Airport because he had swallowed 24 pellets containing heroin. He had agreed to swallow the pills, an enormously risky endeavor, at the suggestion of a coworker.[1]  He was, in short, a "mule,"

---

[1] This was his second trip.  He confessed that he had swallowed 10
(continued...)

the lowest of the low in the drug conspiracy pecking order.  As a result, he was charged in a two-count information, alleging conspiracy to import and importation of heroin into the United States (in violation of 21 U.S.C. §§ 963, 952 and 960).

Germosen immediately cooperated with the government.  He not only confessed to what he had done, but he told officials everything he knew about the source of the drugs and the individuals to whom they were to be delivered.  He wore an electronic recording device on two occasions and recorded his conversations with a so-called "targeted individual."

The problem, a common one for drug mules, was that he did not know very much about the drug operation in which he was involved.  As a result, the government (or rather a committee in the prosecutor's office) decided not to move for a downward departure from the required sentencing range based on his "substantial assistance," § 5K1.1, noting only that it did not "rise to the level of 'substantial assistance' for purposes of a § 5K1.1 downward departure."

But for the operation of the so-called "safety valve,"[2] the quantity of drugs Germosen was carrying (256.1 grams of heroin) would have triggered a mandatory minimum sentence of five years

---

[1](...continued)
pellets in January 2005 as well.

[2] Subsection five of the Mandatory Minimum Sentencing Reform Act, codified at 18 U.S.C. § 3553(f) is known as the "safety valve" provision.

-2-

(21 U.S.C. § 960(b)(2)(A)).  Germosen's lack of a criminal record

and his willingness to tell the authorities what he knew, among

other things, however, offered some relief.  <u>See</u> 18 U.S.C. §

3553(f)(1)-(5). The safety valve permits the Court to impose a

sentence below the mandatory minimum that would otherwise be

applicable in the case of certain low-level, non-violent, first

offenders charged with drug crimes.  In lieu of the mandatory

minimum sentence, the safety valve authorizes a sentence

"pursuant to the [G]uidelines" promulgated by the Sentencing

Commission.[3]  In addition, the Guidelines to which the statute

---

[3] 18 U.S.C. § 3553(f) provides:

> (f) Limitation on applicability of statutory minimums in certain cases.
>
> Notwithstanding any other provision of law, in the case of an offense under section 401, 404, or 406 of the Controlled Substances Act (21 U.S.C. 841, 844, 846), the court shall impose a sentence pursuant to guidelines promulgated by the United States Sentencing Commission under section 994 of title 28 without regard to any statutory minimum sentence, if the court finds at sentencing, after the Government has been afforded the opportunity to make a recommendation, that --
> (1) the defendant does not have more than 1 criminal history point, as determined under the sentencing guidelines;
> (2) the defendant did not use violence or credible threats of violence or possess a firearm or other dangerous weapon (or induce another participant to do so) in connection with the offense;
> (3) the offense did not result in death or serious bodily injury to any person;
> (4) the defendant was not an organizer, leader, manager, or supervisor of others in the offense, as determined under the sentencing guidelines and was not engaged in a continuing criminal enterprise, as defined in section 408 of the Controlled Substances Act; and
> (5) not later than the time of the sentencing hearing, the defendant has truthfully provided to the Government all information and evidence the defendant
>
> (continued...)

refers are now advisory since <u>United States v. Booker</u>, 543 U.S. 220 (2005).

Safety valve or not, the sentence suggested by the Guidelines is a considerable one, particularly for someone who has never been arrested, detained, or incarcerated. The range is 37 to 46 months, with the Government recommending the low end.

Germosen moved for a downward adjustment because of his post-offense rehabilitation, and especially, his cooperation with the government. But given the facts of the case -- Germosen's law abiding life before and after the offense -- the rehabilitation claim made little sense. After reading the pleadings and the presentence report about Germosen's life and family circumstances, I noted that Germosen's offense -- operating as a "drug mule," with all of the attendant risks to his health and liberty -- seemed completely at odds with the life that he had led. I gave notice to the parties that I was considering a traditional Guideline departure, one that seemed more appropriate to Germosen's situation. I asked for briefing

---

[3](...continued)
    has concerning the offense or offenses that were part
    of the same course of conduct or of a common scheme or
    plan, but the fact that the defendant has no relevant
    or useful other information to provide or that the
    Government is already aware of the information shall
    not preclude a determination by the court that the
    defendant has complied with this requirement.

    The Guideline provisions mirror those of the statute. <u>See</u> U.S.S.G. § 5C1.2. In addition, the Guidelines subtract two additional points from the offense level for offenders who qualify for the safety valve.

as to whether a Guideline departure for aberrant behavior under U.S.S.G. § 5K2.20 applied.

After briefing, I concluded that the specific language of the Guideline, § 5K2.20, and the application notes, did not apply to Germosen.  In the most recent incarnation of the Guideline, after the PROTECT Act,[4] the Sentencing Commission apparently excluded "serious drug offenses" from consideration in connection with an "aberrant behavior" departure.  "Serious drug offenses" was defined so broadly that carrying drugs in one's body for piecework wages was treated the same for "aberrant behavior" purposes as carrying drugs in a briefcase for massive profits. Nothing in the Guideline text, the application notes, or the commentary, indicated why this group was excluded or even how the exclusion was related to the statutory purposes of sentencing.

True, some of the letters to the Commission by groups interested in the proposed Guideline were concerned about the abuse of aberrant behavior departures in the case of white-collar offenders.  But those concerns do not apply here.[5]  This case is not about the well-heeled banker who commits a substantial fraud,

---

[4] PROTECT Act, Pub. L. No. 108-21, 401(b)(3)-(5), (g), (i), 117 Stat. 650, 668 (2003).

[5] See Statement of U.S. Attorney James B. Comey Before the Senate Judiciary Subcommittee on Crime and Drugs, 15 Fed. Sent. R. 323 (June 2003). Comey complained that certain departures, like § 5K2.20, are "fodder in virtually every sentencing of a white-collar defendant given the community standards and background of most white-collar defendants."  Indeed, the vast majority of the comments of the Department of Justice representatives concerned white-collar defendants.  See letter of Eric Jaso, Counselor ex officio member of the Commission, 15 Fed. Sent. R. 326 (June 2003).

all the while supporting the local symphony and countless
community groups.  It is not about white-collar offenders who try
to buy their way out of trouble by pointing to their charitable
contributions.  This case involves a man who struggled all his
life, supported his community at great personal risk, and then
made a mistake.  It is not about Enron.  It is about a drug mule.

I concluded that a non-Guideline sentence was appropriate in
this case. Germosen's conduct was clearly aberrant, clearly
inconsistent with the life he led before these offenses, and
immediately thereafter.  And it was inconsistent with the life he
was likely to lead in the future, as much as human beings -- and
flawed judges -- can predict.  Rather than a sentence in the 37-
46 months range, I sentenced Germosen to probation for two years,
six months of which to be served in home detention, along with
community service.

My approach was as follows:

First, "considering the Guidelines," as <u>Booker</u> requires, <u>see
United States v. Jimenez-Beltre</u>, 440 F. 3d 514, 518 (1st Cir.
2006), meant considering both a sentence "within the applicable
Guideline range *or within the permissible departure authority.*"[6]
Departures have always been part and parcel of the Guidelines.
<u>See</u> <u>United States v. Lacarubba</u>, 184 F. Supp. 2d 89, 93 (D. Mass.
2002).  Second, even the Guideline evaluation stage requires the

---

[6] <u>United States v. Crosby</u>, 397 F. 3d 103, 113 (2d Cir. 2005) (italics
supplied).

sentencing judge to look at *all* sentencing facts, not just those
made relevant by the Guidelines, if only to decide whether a
departure or a variance is warranted.[7]  When I considered all the
facts, an aberrant behavior departure was appropriate.

Third, considering the Guidelines, and especially, § 5K2.20,
necessarily means critically evaluating them.  It cannot be
enough to assume that the Guidelines perfectly embody the
purposes of sentencing.  Whatever weight we give to them, even
characterizing them as presumptively reasonable, as some courts
have done -- notably, not the First Circuit -- will be irrelevant
if courts believe that the Guidelines are, after all is
considered, flawless.  Indeed, if judges conclude that the
Sentencing Commission did all of the sentencing thinking for
them, and that all a judge has to do is to apply the Commission's
work, the Guidelines would be advisory in name only.  Critically
evaluating the Guidelines, at the very least, gives a court the
tools to understand when to apply a Guideline sentence, when to
reject it, or when to modify it in the case at bar.

Fourth, as the Guideline sentence was inappropriate, I
considered the non-Guideline sentence that was more consistent

---

[7] For example, under 18 U.S.C. § 3553(b), a judge is supposed to
evaluate whether a departure from the Guidelines was warranted (as involving
an "aggravating or mitigating circumstance of a kind, or to a degree, not
adequately taken into consideration by the Sentencing Commission").  To make
that judgment, the court had to have "a perspective independent of the
Guidelines," a perspective gleaned from evaluating all the facts and
circumstances of the case.  See United States v. Ribot, 97 F. Supp. 2d 74, 75
n. 2 (D. Mass. 1999).

with the purposes of sentencing.  After I found that the
exclusion of Germosen from § 5K2.20 treatment was not consistent
with the purposes of punishment, I determined that, together with
home detention and community service, probation was the best
sentence by all statutory measures under 18 U.S.C. § 3553(a).

I.    **BACKGROUND**

Yohan A. Germosen was born on January 10, 1977, in the
Dominican Republic.  His parents separated when he was 3 or 4
years old.  He was raised by his mother, Cary Maldonado, and then
a maternal aunt and godmother after his mother moved to Puerto
Rico to find better employment opportunities.

In 1991, when Germosen was 14, his mother was able to obtain
a visa for him, after numerous attempts.  By that time she had
become involved with Victor Nunez, with whom she had two
children, and moved from Puerto Rico to Massachusetts.  Germosen
applied for and was granted a United States citizenship three
years later.

Germosen lived with his mother and her new family in a small
apartment in the South End.  His mother worked in the
housekeeping department of a downtown hotel.  Germosen attended
school, picked up his siblings from day care and elementary
school, and watched them until his mother came home.  Shortly
thereafter, Ms. Maldonado left Mr. Nunez when he became

physically abusive.  She married Jose Maldonado; the family moved
into public housing in Charlestown, Massachusetts.

In Charlestown, defendant reported that he and his siblings
were a frequent target of hate crimes and racial epithets.  He
did not speak English well.  He was regularly getting into fights
to protect himself and his siblings.  But then he took a
different approach, one that was, by all accounts, extraordinary
for an adolescent male.  He participated in a program called
"Words, Not Weapons," to promote understanding of people with
other cultures.  Notwithstanding his efforts, the attacks
continued.  Once, after school, someone knocked on the door to
his apartment.  When Germosen answered, he was hit in the face so
hard that he lost consciousness and was hospitalized.
Thereafter, the stress became unbearable; Germosen threatened
suicide.  He began to attend night school, both to escape the
violence and to make certain that he would graduate on time.

After high school, Germosen continued to work with his
community to address the problems he had confronted, and the
racist attitudes which had victimized him.  He became involved
with Sociedad Latina, the oldest Latino organization in Boston,
volunteering as a peer leader and a youth worker. Thereafter he
enrolled at Bunker Hill Community College which he attended for
over a year.  In 2001, he began working as a car washer in
Armondo's Auto Detailing and then a sales representative at North

-9-

Shore Pontiac in Malden, Massachusetts.  In 2005, he received a
real estate license.

His family circumstances improved, mainly through his
mother's considerable efforts.  Now divorced from her husband,
Ms. Maldonado bought a small cell phone accessory business which
Germosen struggled to build.  He had five children from
relationships with two women, all of whom he conscientiously
supported and visited.  At the time of sentencing, he had
returned to live with his mother.  By all accounts, Germosen was
responsible at work and responsible to his family -- his
children, his siblings, his mother.

It was the prospect of quick money to relieve some of these
burdens that led Germosen to agree when a coworker at North Shore
Pontiac proposed a short trip to the Dominican Republic.  It was,
he concedes, a moment of weakness and shame.  He stated during
his sentencing:

> I regret every second of it.  My mother
> raised us the right way, pretty much a single
> mother.  All four of us and I'm very proud of
> my mother . . . She works so hard to bring
> the family to where we are, and with one
> decision, me . . . I step on the family name.
> I feel worse than human waste.

Germosen's reaction to being apprehended was unequivocal.
He confessed, and offered substantial assistance to the
government in every conceivable way he could -- information,
wearing "a wire," recording transactions with "targets."  He

never refused a single government request.  Unlike many
offenders, cooperation with the authorities did not appear to be
just another crass, expedient business calculation.  In fact,
Germosen's cooperation seemed entirely consistent with his
community work in Charlestown, and with Sociedad Latina.

## II.  <u>POST-OFFENSE REHABILITATION AND SUBSTANTIAL ASSISTANCE</u>

Germosen moved for a downward departure because of his post
offense rehabilitation, including the extraordinary steps he took
to cooperate with the government.

The government's motion for a "substantial assistance"
departure under § 5K1.1 confers an enormous potential benefit on
a defendant.  It not only enables the court to impose a sentence
below the mandatory minimum, it confers considerably more
discretion on the trial judge in determining the length of the
defendant's sentence than he or she has in other situations.[8]

Inexplicably, Germosen's efforts were not enough for the
government.  And that decision -- to forgo a §5K1.1 motion -- is
dispositive.  Even post <u>Booker</u>,§ 5K1.1 is the realm of the
prosecutor's judgment, not the court's.[9]  And, while a court's

---

[8] <u>See</u> Bruce M. Selya & John C. Massaro, *The Illustrative Role of
Substantial Assistance Departures in Combating Ultra-Uniformity*, 35 B.C. L.
Rev. 799, 827 (1994) (noting that "sentencing courts retain appreciably more
discretion in determining the contours of a substantial assistance departure
than when making departures under other guideline provisions.")  <u>See</u> <u>also</u>
Linda Drazga Maxfield & John H. Kramer, *U.S. Sentencing Commission,
Substantial Assistance: An Empirical Yardstick Gauging Equity in Current
Federal Policy and Practice* (1998).

[9] <u>United States v. Bermudez</u>, 407 F. 3d 536 (1st Cir. 2005)(finding no
error in government's refusal to file substantial assistance motion and
                                                        (continued...)

decisions must be public, detailed, on the record, and subject to appeal, the government's decision to decline § 5K1.1 status does not.  All that we know is that the government -- or a committee of the prosecutor's office -- has refused to move for a substantial assistance departure.  We are not authorized to second-guess that decision.[10]

Ironically, Germosen's argument about post offense rehabilitation is undercut by his own stellar background.  He was a law abiding citizen before this conduct; he continued to be afterwards.  Germosen's criminal conduct was an aberration in an otherwise law abiding life.  Accordingly, I turned to consider the aberrant conduct Guideline departure since it "directs the Court to evaluate [the] offense against a backdrop of the rest of

---

[9](...continued)
implicitly holding that such a motion is a prerequisite for a substantial assistance departure.)  Cf. United States v. Fernandez, 443 F. 3d 19, 33-34 (2d Cir. 2006)(suggesting that a judge may consider a defendant's cooperation in setting a sentence outside the guideline range, even without a government motion.)  In any event, the court has no power to depart below the mandatory minimum without a government motion for a departure based on substantial assistance.

[10] The Sentencing Commission acknowledged that there were "irregular and inconsistent policies and practices among the various districts" for employing substantial assistance departures.  United States Sentencing Commission, Fifteen Years of Guidelines Sentencing 103-106 (2004).  Statistics released by the Sentencing Commission in the summer of 2006, for example, showed that the United States' Attorney's Office for the District of Massachusetts had among the lowest rate of departure for substantial assistance than any other office.  See Letter of Chief Judge Mark Wolf, to U.S. House of Representatives Committee on the Judiciary Subcommittee on Crime, Terrorism, and Homeland Security, dated March 21, 2006. For example, the Northern District of New York is at 43% substantial assistance departures, while the District of Massachusetts is at 12%, according to the most recent statistics.  U.S. Sentencing Commission's Report on the Impact of United States v. Booker on Federal Sentencing (March 2006).

the defendant's life."  <u>United States v. Ribot</u>, 97 F. Supp. 2d at
85.

III. **<u>ABERRANT BEHAVIOR</u>**

    A.   **<u>Judicial Construction of Aberrant Behavior</u>**

    The Sentencing Reform Act, 28 U.S.C. § 994(j) directed the
Sentencing Commission to deal specifically with first offenders.
It ordered the Commission to "insure that the guidelines reflect
the general appropriateness of imposing a sentence other than
imprisonment in cases in which the defendant is a first offender
who has not been convicted of a crime of violence or an otherwise
serious offense. . ."  <u>Id.</u>

    The Commission, however, implemented that statutory
directive by redefining "serious offense" in a way that was
entirely inconsistent with prior practice, and not at all based
on any real data or analysis.  First offender status was folded
into criminal history category I.  Category I included those who
had never had any encounters with the criminal justice system,
never been arrested, as well as individuals who had been arrested
and convicted but received short sentences.  Shortly after the
implementation of the Guidelines, it was clear that the
Commission's decisions led to a far higher incarceration rate for
non-violent first offenders than had been the pattern pre-
Guidelines.[11]

_____

    [11] While before the Guidelines nearly 50% of federal defendants were
(continued...)

There is a demonstrable difference in the recidivism rates
of real first offenders as compared to other defendants in
Criminal History Category I.  See Michael Edmund O'Neill,
*Abraham's Legacy: An Empirical Assessment of (Nearly) First-Time
Offenders in the Federal System*, 42 B.C. L. Rev. 291 (2001).
Minimal or no prior involvement with the criminal justice system
is a powerful predictor of a reduced likelihood of recidivism.
See *A Comparison of the Federal Sentencing Guidelines Criminal
History Category and the U.S. Parole Commission Salient Factor
Score*, 15 (Jan. 4, 2005),
http//www.ussc.gov/publicat/RecidivismSalient FactorCom.pdf.
Commission reports have concluded that first offenders are more
likely to be involved in less dangerous offenses and that their
offenses involve fewer indicia of culpability, such as no use of
violence or weapons, no bodily injury, a minor role, or
acceptance of responsibility.  They are more likely than
offenders with criminal histories to have a high school
education, to be employed and to have dependents.  Recidivism and
the First Offender (May 2004), http://www.ussc.
gov/publicat/Recidivism_First Offender.pdf.

Discontent with the Commission's approach was apparent from
the beginning.  Courts took a line in the Introduction to the

---

[11](...continued)
sentenced to probation, see Bureau of Justice Statistics Sourcebook 1994,
table 5.27, USSC Annual Report, table B-7 (providing rates of imprisonment
from 1984-1989), afterwards it was only 15%. U.S.S.C. 1996 Sourcebook of
Federal Sentencing Statistics, 20.

-14-

Guidelines to carve out a new category, judicially-defined and enforced.  In the Introduction, the Commission specifically acknowledged that it had not dealt with "single acts of aberrant behavior, which may still justify probation at higher offense levels through departures."  U.S.S.G. Ch. 1, Pt. A, intro comment 4(d).

        The First Circuit defined the aberrant behavior departure as involving consideration of the "totality of the circumstances" see United States v. Grandmaison, 77 F. 3d 555, 563 (1st Cir. 1996), a definition which it adopted from the Ninth and Tenth Circuits, and which was then followed by the Second Circuit. Factors that may be considered in making this determination include "pecuniary gain to the defendant, charitable activities, prior good deeds, and efforts to mitigate the effects of the crime[.]"  Grandmaison, 77 F. 3d at 563.  "Spontaneity and thoughtlessness may also be among the factors considered, though they are not prerequisites for departure."  Id.  Such departures, the Court found, are available even though a "course of criminal conduct involves more than one criminal act[.]"  Id.  In effect, the First Circuit's focus was on situating the offense in the context of the offender's life, asking whether this offense was a "marked departure from the past and is unlikely to recur." United States v. Bradstreet, 135 F. 3d 46, 56 (1st Cir. 1998).

Other Circuits rejected the "totality of the evidence approach" and placed emphasis on the offense itself, whether it involved "a spontaneous and seemingly thoughtless act rather than one which was the result of substantial planning." United States v. Carey, 895 F. 2d 318, 325 (7th Cir. 1990).

**B.    Adoption of Safety Valve**

On a parallel track with the aberrant conduct cases was the so-called safety valve provision, which was concerned with a subset of individuals with a criminal history I score: Low level, non-violent defendants accused of drug offenses.  These individuals were being subjected to disproportionate punishment, namely, mandatory minimum sentences, precisely because they were not high enough in the criminal hierarchy to provide the government with assistance that the United States Attorney's office considered "substantial."

When enacted in 1994,[12] Congress set the general framework for the safety valve, but the Commission was to fill in the standards with its Guidelines, i.e. not more than one criminal history point *as determined by the Commission*, no violence, no death or bodily injury, defendant was not an organizer or leader *as determined by the Commission*, and the defendant must give a complete proffer.

**C.    5K2.20**

_____

[12] H.R. Rep. No. 103-460, 103rd Cong., 2d Sess., 1994 WL 107571 (1994).

In 2000, the United States Sentencing Commission stepped in to address judicially defined aberrant conduct departures as well.  When it dealt with these departures, however, it did not study the relationship between the varying court definitions of aberrant behavior and the statutory purposes of sentencing, e.g. the kinds of offenders to whom the judicially created departures would apply and their recidivism rates.  It did not evaluate alternatives to incarceration for non-violent first offenders. In fact, one searches in vain for much legislative history of the aberrant behavior Guideline at all, let alone any mention of the purposes of sentencing in the application notes.

All that the Commission did in § 5K2.20 was to split the difference, combining the expansive "totality of the circumstances" approach of certain circuits with the narrow "spontaneous approach" of others, excluding certain acts and offenders but including more transactions than merely reflexive decisions.

Under § 5K2.20 "aberrant behavior" includes "a single criminal occurrence" or "a single criminal transaction," and thus, was somewhat broader than "a single act."  These departures would be limited to offenses (1) committed without significant planning; (2) of limited duration; and (3) that represent a marked deviation by the defendant from an otherwise law-abiding life.  § 5K2.20 app. n. 1.

Certain offenses were excluded from "aberrant conduct"
treatment, notably a "serious drug trafficking offense" which was
broadly defined to mean *any controlled substance offense under
Title 21 of the United States Code*, other than simple possession
under 21 U.S.C. § 844, "that because the defendant does not meet
the criteria [of the safety valve] results in the imposition of a
mandatory minimum term of imprisonment. . ."  A defendant who met
the criteria of the safety valve, the non-violent, truthful, low
level offender, could be considered for an aberrant conduct
departure.

Once it was clear that the offense was of a type covered by
the Guideline and not excluded by its terms, the court was
permitted to consider the defendant's (A) mental and emotional
conditions; (B) employment record; (C) record of prior good
works; (D) motivation for committing the offense; and (E) efforts
to mitigate the effects of the offense."  5K2.20 app. note 3.

Why did the Commission draw these particular lines -- these
particular exclusions -- and adopt these particular definitions?
The Commission never explained <u>why</u>; it only announced <u>what</u> it had
done:

> The Commission concluded that this
> application of the current language in
> Chapter One is overly restrictive and may
> preclude departures for aberrant behavior in
> circumstances in which such a departure might
> be warranted.  For this reason, the
> Commission attempted to slightly relax the
> "single act" rule in some respects, and
> provide guidance and limitations regarding

-18-

> what can be considered aberrant behavior.  At
> the same time, the Commission also chose not
> to adopt the 'totality of circumstances'
> approach endorsed by the minority of
> circuits, concluding that the latter approach
> is overly broad and vague.  The Commission
> anticipates that this compromise amendment
> will not broadly expand departures for
> aberrant behavior.

Amendment 603, Chapter 5, Part K, subpart 2, as amended (2000).

Nevertheless, Germosen's offense, his life and his record would

have fit within the 2000 version of § 5K2.20 had it not been

amended further.

But it was amended further. In 2003, Congress passed the

PROTECT Act[13] and directed the Commission to reduce the incidence

of downward departures.  As a result, the Sentencing Commission

revised the aberrant conduct departure provision and expressly

excluded defendants who, like Germosen, were safety valve

eligible.  U.S.S.G. 5K2.20 app. n. 1.[14] This time, no reasons

were given for the change, other than Congressional pressure to

reduce departures.

### D.  <u>Application of § 5K2.20</u>

Germosen's case clearly reflects the kinds of congressional

concerns animating 28 U.S.C. § 994(j), where the Commission was

directed to consider probation for first offenders not convicted

---

[13] PROTECT Act, Pub. L. No. 108-21, 401(b)(3)-(5), (g), (i), 117 Stat. 650, 668 (2003).

[14] "Serious drug trafficking offense" means "any controlled substance offense under title 21" other than simple possession, "that provides for a mandatory minimum term of imprisonment of five years or greater, regardless of whether the defendant meets [the safety valve criteria]."

of serious offenses.  It reflects the Congressional concerns on which the "safety valve" is based, about the unfairness of applying a mandatory minimum sentence for non-violent, first offender drug defendants.  It also reflects judges' concerns, based on the Guideline Manual's Introduction, for the real first offender, the person who literally has had no prior encounters with the criminal justice system.  And it reflects the Commission staff's concerns about true first offenders, whose rate of recidivism is low.

Notwithstanding these concerns, the 2003 Guideline definition of "serious drug transaction" in § 5K2.20 excludes the offense of which Germosen stands convicted.  It would put into the same category an offender who is so far down the organizational tree that he would endanger his life by putting drugs in his own body, for a relatively small sum of money, and one who was reaping vast profits from the same act and the same quantity.  Nowhere in the Guidelines is there <u>any</u> indication of why this exclusion makes sense, or comports with the purposes of sentencing.  In a now advisory Guideline regime, I will not assume that § 5K2.20 reflects the statutory purposes when it clearly does not.

This offense did not involve a complex transaction with much thought or deliberation.  While it was not a spontaneous act, as courts before the Guideline had required, it surely did not require significant planning.  Indeed, all the planning was

-20-

done by others far more culpable than Germosen.  The offense was
of limited duration: One trip in January and another in March.

Those trips plainly represented a marked deviation by the
defendant from an otherwise law abiding life; there was no
violence.  The defendant's record was wholly free of any criminal
offenses.  And when he was apprehended, his cooperation with the
authorities reflected just what his prior life had been like --
constructive, cooperative and law abiding.

   **E.**   **Sentence**

I departed from an offense level 21 to an offense level 10,
criminal history I.

I sentenced Germosen to two years of probation, including
six months in home detention.  In addition, given his community
work, I ordered Germosen to perform community service, to talk to
children about how risky this behavior was.  This sentence
reflects the policies of the sentencing reform act far better
than the exclusionary language of § 5K2.20.  It promotes respect
for the law:  Germosen will have a felony conviction on his
record.  It will affect every government or private application
he seeks, every loan he applies for, every government benefit he
tries to obtain.  It promotes deterrence:  Germosen will likely
be deterred from taking these chances again.


**SO ORDERED.**

Date:   January 18, 2007          /s/ Nancy Gertner
                                  NANCY GERTNER, U.S.D.C.